MASLAND et al. v. E. I. DU PONT DE NEMOURS POWDER CO. et al.

(Circuit Court of Appeals, Third Circuit.   June 6, 1915.)

No. 1954.

CONSTITUTIONAL LAW ☞312—DUE PROCESS OF LAW—RIGHT TO CONFER WITH WITNESSES.

In a suit to restrain a former employé of plaintiff from divulging its secret processes used in making artificial leather, wherein defendant claimed that such processes were well known to the trade, an order restraining defendant from disclosing the processes to experts, or to fact witnesses produced at or during the taking of proofs at the trial, constituted an undue restriction upon defendant's right to due process of law, since as to the issue whether the processes were in fact trade secrets the defendant had the right to consult and confer with witnesses before and at the trial and would therefore necessarily be obliged to divulge such processes to them.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 928; Dec. Dig. ☞312.]

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Dickinson, Judge.

Suit in equity by the E. I. Du Pont de Nemours Powder Company and another against Walter E. Masland and others to restrain defendant from divulging trade secrets.   From an order refusing to vacate a temporary restraining order (222 Fed. 340), defendants appeal.   Reversed.

Geo. Q. Horwitz, of Philadelphia, Pa., for appellants.
Edwin J. Prindle, of New York City, for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge.   The situation presented by this appeal is rather out of the common, and calls for a somewhat detailed statement in approaching the point for decision.

The only plaintiff that need be noticed at this stage is the E. I. Du Pont de Nemours Powder Company, and the only defendant is Walter E. Masland.   During the last four or five years the company has been engaged in making artificial leather, among other products, and for nearly ten years Masland was a chemist in the company's employ.   He gave up his position on June 13, 1914, and on July 3 the pending bill in equity was filed.   In brief, it charges as follows: As a part of the company's extensive and varied business, experimental stations are maintained for the purpose of investigation, invention, and discovery; some of these inventions and discoveries are protected by letters patent, and others are guarded as trade secrets. Masland was employed with the understanding that the secrets of the business were not to be disclosed to others, or used in any manner by himself or other employés.   In August, 1910, the company turned its attention to artificial leather, and early in 1912 placed Mas-

land in charge of experimental work in connection therewith, giving h'im access to all the secret processes. In June, 1914, Masland left the company's employ, and is now intending to begin the manufacture of artificial leather, and to use therein the company's "secret processes, apparatuses, articles of manufacture, and compositions of matter."

The bill prayed for a preliminary injunction to restrain such threatened use or disclosure. Affidavits were filed by both parties, and on July 15 the motion was argued. On July 22 Masland filed an answer, which admitted much in the bill, including his purpose to make artificial leather, but denied his intention to use any of the plaintiff's secret processes, etc. He averred that he had never agreed with the plaintiff "regarding any confidential relations in connection with the manufacture of artificial leather," and declared that he intended "to manufacture artificial leather by processes which are common knowledge of artificial leather manufacturers, and when engaged in this work it is my intention to use some basic raw materials which, so far as I know, are not used and never have been used by the (plaintiff), but which are used in some degree and in certain units by competing companies." He averred that knowledge regarding these materials was common to all makers of artificial leather, and repeated the assertion that he did not intend to use or disclose any knowledge obtained by him in any confidential relation while in the employ of the plaintiff, declaring again that many processes and formulas claimed by the company as its own secrets were well known to the trade. On August 5, the answer as well as the affidavits being before Judge Dickinson, he refused a preliminary injunction for the reasons stated in the margin, also reported in E. I. Du Pont de Nemours Powder Co. v. Masland (D. C.) 216 Fed. 271.[1]

[1] Dickinson, District Judge. We follow the usual practice in not discussing the merits of the bill on this motion further than is necessary to make clear the reason for the conclusion we have reached.

The bill alleges knowledge of secret processes of manufacture necessary to the successful prosecution of the business of plaintiff, gained by one of the defendants while in the employ of the plaintiff and maintaining confidential relations with it.

The further averment is that these processes will be disclosed, unless such disclosure is prohibited by the court. The other defendants are alleged to be associated with the plaintiff's former employé in a contemplated business which will involve the use of plaintiff's processes and a disclosure of the secrets of its business.

The answer denies all the salient averments of the bill. The line which terminates the limits where the rights of the plaintiff end and those of the defendants begin is a difficult one to draw. The iniquity of an employé who takes away with him the property of his employer, existing in the form of valuable processes, is as clear as if he asported any other form of property. The right of the employé to use his abilities, developed through his experiences, to the utmost of his capacity, is equally clear. This right of the employé and his obligation to preserve to the full the property rights of the employer are shaded into each other by lines so fine that it is doubtful whether anything but a nice sense of honor can keep them distinguished.

To award an injunction pendente lite is to in some measure at least prejudge the case, and involves a finding that the defendants are disposed to act contra bonos mores. At the same time it is within at least the theoretic possibilities that to refuse the writ is to permit a great injustice to be done the plaintiff. There are considerations to be taken into the account, how-

As will be observed, he coupled the refusal "with leave to renew the application at any time," and on November 20 the plaintiff did renew the application. On November 25 another argument was had, but this was not disposed of until February 25, when the court filed an opinion saying, inter alia:

"The right of the plaintiffs is that the secret processes which they claim as their exclusive property should not have their value destroyed by a disclosure pending the proof of the right. The right of the defendants is to have the extent of the plaintiffs' rights properly found and determined, so that the defendants may not be hampered in their business activities. It results from this that the case should be set down for trial by the plaintiffs at the earliest convenient time, and meanwhile that a restraining order issue against any disclosure of processes claimed to be the property of the plaintiffs. The equity rules, supplemented by the discretionary power of the trial judge, afford the means of ample protection to both parties in their rights. The proof supporting the case which the defendants are to meet can be submitted by the plaintiffs at an early date, and sufficient time then be given to the defendants in which to present reply proofs. The protection to be thrown around the taking of such proofs, and who shall be permitted to attend thereat, can be agreed upon by counsel, or determined by the court at the time. If an early date for final hearing is fixed, defendants can submit to an ad interim restraining order without injury. Unless the case can be promptly disposed of, the order should not continue indefinitely."

No formal order, however, was made at that time, and on March 25 the case came on for final hearing in camera. The plaintiff took testimony on March 25 and 26, but as no report of the proceedings has been laid before us we do not know precisely what was offered. It sufficiently appears, however, that difficulty and friction developed, for on March 26, while the plaintiff was still presenting its case and had already disclosed some (if not all) of the disputed formulas, the court made an order (following the opinion of February 25), restraining the defendant "from directly or indirectly disclosing any and all processes, etc., in issue herein, claimed to be the property of the plaintiffs." The defendant was expressly enjoined from disclosing such processes, etc., either "to experts or to fact witnesses produced at or during the taking of proofs of trial," but excepting his counsel from the scope of the order. He was also given leave "to move to vacate said injunction if occasion to consult expert witnesses or otherwise arises," and the order further provided "that sufficient time be given defendant in which to present reply proofs to the proofs submitted by plaintiffs." Finally the court added "that the protection to be thrown around the taking of proofs, and who shall be permitted to attend thereat, may be agreed upon by counsel or determined by the court at the time such proofs are taken."

ever, which promise a more satisfying judgment of the respective rights of the parties after a full hearing than now.

The defendant especially concerned has denied all intention to do the plaintiff the injury which the latter thinks to be threatened. It is to be expected that the defendants will continue to see the wisdom and prudence, as well as the righteousness, of abiding in this position and awaiting a determination of their rights and those of the plaintiff on final hearing.

The preliminary injunction is now refused, with leave to renew the application at any time, and costs to await final decree.

On April 7, at an adjournment of the trial, the defendant moved to vacate the order so far as it restrained him or his counsel from disclosing "to experts or to fact witnesses, produced at or during the taking of proofs of trial," the processes, etc., claimed to be the plaintiff's property, asserting his right to consult with either class of witnesses regarding these processes "either during cross-examination or in preparation or presentation of the defendant's case." Affidavits were presented by both parties, and a few days afterwards the trial judge filed another opinion—also quoted below, but not otherwise reported—which sets forth some of the difficulties of the situation:

"An unusual situation is presented in this case, the only way to cope with which is by a pro forma refusal of the present motion and the entry of an order continuing the trial of the cause until the question can be passed upon by an appellate court.

"The question arises out of this condition of facts: The bill was filed to restrain the defendant from disclosing what are claimed to be the trade secrets of the plaintiff, knowledge of which came to the defendant while in plaintiff's employ, and which were confidentially communicated to him. An application for a preliminary injunction was refused because, among other reasons, no finding against the defendant of any intention to disclose was at the time justified. The case was met in the highly commendable spirit on both sides of a due regard for the rights of each other, and it was arranged that no disclosure should be made by defendant without notice beforehand sufficient to give plaintiff time to apply for relief, and express leave was granted plaintiff to renew its application for a preliminary injunction or restraining order should need for protection arise. Efforts were then made to devise some method of trying the case without divulging any of the processes claimed to be the property of the plaintiff. To this end depositions were taken and the defendant given information of what the claimed secret processes were, the formulæ of which were kept in camera. A predicament then arose. The defendant maintains that some of the claimed secret processes are not such at all, but processes which any one in the business has the free right to use. The truth of the averments on the one side and the other are asserted to be the proper subject of expert knowledge and testimony. The defendant therefore notified the plaintiff and the court that they proposed to exercise their claimed right of employing experts and discussing with them the features of the case which were in controversy. This, as was to be expected, alarmed the plaintiff who renewed its application for a preliminary injunction or restraining order. The dilemma in which the plaintiff was placed could not be ignored.

"The exigencies of the case were met by the order of the court allowing the injunction. This was made with the thought in mind that there was no immediate need for the employment of experts and that the cause might proceed to trial in the hope that some method of conserving the rights of both parties could be found. Leave was therefore given the defendant to move to vacate the order at any time, and if unprepared at the trial to present his defense, to move for a continuance. To this as a practical expedient, defendant had no objection, provided he was fully protected in the assertion of his claimed rights. The order was therefore made and an exception allowed to the defendant and the parties proceeded to trial. To further raise the question witnesses for the plaintiff were asked on cross-examination to state the formulæ embodying the secret processes, and the present motion to vacate was made.

"This brings us face to face with the predicament which now must be met. The dilemma of the plaintiff has become acute. It would, of course, be idle to the point of flat absurdity for the trial judge to compel the plaintiff to publicly disclose its processes in the act of protecting them from disclosure. This difficulty could be met by an appropriate order for keeping the answers to the questions asked in camera. There is an admitted necessity that the trial judge, parties and counsel on both sides should know. To this plaintiff does

not object. Counsel for defendant claims (and we cannot do otherwise than find this to be in good faith) that it is necessary for them to employ and confer with experts. They claim this to be their right. If it is allowed by the trial judge the practical result is that plaintiff is driven to an abandonment of its case without being able to have the ruling reviewed by an appellate court. The only way out of this dilemma is for us to pro forma refuse the defendant's motion and continue the preliminary injunction, restraining the defendant from disclosing to expert witnesses employed by them the processes claimed by the plaintiff as its secrets in order to afford an opportunity to the defendant to appeal from this order and to have their rights in the premises declared."

On April 13, an order was made refusing to vacate the preliminary injunction, or restraining order, entered on March 26, but adding a proviso "that defendants shall not be deprived of the right to examine expert and fact witnesses"—still with the important exception that such witnesses might not be examined with reference to the processes, etc., "in issue herein and claimed to be the property of the plaintiffs." The pending appeal is from this order, which refuses to vacate (while it somewhat amends) the restraining order or injunction of March 26. We have had some doubt whether this order is appealable. It was made during the progress of the trial, apparently before the company had finished the presentation of its case, but at all events before the defendant had offered any evidence, and may be construed with little difficulty as a mere direction concerning the method of conducting the trial. But, as the order is regarded as vital by both parties, we shall treat the general subject as properly before us.

In the first place, it should be observed that the situation does not present the question, how a conceded trade secret should be protected: it is true, the company asserts these formulas to be its own private property, but the defendant denies the assertion, declaring them to be matters of common knowledge, and the district judge has found this issue to be tendered in good faith. By whom, therefore, and how, is this fundamental controversy to be decided? Obviously, by the tribunal to which the company itself has appealed, and by the use of the flexible procedure and the elastic process of a court of equity. It is undeniable that the subject-matter of the dispute is property—perhaps of much value—namely, the defendant's right to pursue a lawful business unmolested, as well as the company's right to prevent competitors from making an unlawful use of its private methods. But the peculiar nature of the property requires the court to take peculiar care to avoid doing injury to either party. If the formulas are in reality trade secrets, they are entitled to protection; if in fact they are already well known, the defendant has a right to use them freely. The truth upon this subject is therefore the very first fact to be determined, and the court could not evade that duty, even if it so desired. The method of ascertaining any fact in the trial of a cause is so largely within the discretion of the trial judge that an appellate court is not likely to interfere with details of administration; these must of necessity be entrusted to the better judgment of a court of first instance. But there are certain fundamental rights to which a defendant is entitled if he is to enjoy due process of law. Among them are these; he must be allowed to learn his adversary's case, and he must be heard in his own

defense. In order to be heard (within the proper meaning of that word) he must be allowed to prepare his defense, and this he cannot do unless he be permitted to consult with witnesses upon the matters in issue, and to examine them in court according to the established rules that govern a trial. If the trial involve a question that can only be properly understood by the aid of expert testimony, he must be allowed to consult such witnesses in order that he may have the help of their skill and knowledge.

When in the course of a plaintiff's case he is obliged to disclose a process whose secret character is in dispute, he necessarily offers the process to be examined by his antagonist as well as by the court; and while the court may and should guard the disclosure as carefully as possible, the defendant cannot be denied his right to a proper presentation of his defense. Ordinarily he cannot be confined to testimony from his own lips; he is entitled to call other witnesses in support of his asserted right, and he is equally entitled to confer with them in advance. And, if this involves a certain risk in case the process should turn out to be really a secret, we do not see how the risk can possibly be avoided. The method of taking testimony in court is always in the power, and largely in the discretion, of the trial judge, and in such a case as this the hearing is properly in camera, with such restrictions on the presence of witnesses as the circumstances may fairly indicate, and as the rights of the parties may permit. We think that the power of the court to enjoin and enforce secrecy on all the participants in such a trial is likely to be effective, but after all some risk must inevitably be run; a trial is a trial, and a court is a court, where a judicial hearing can only be conducted by obeying the fundamental rules that govern such investigations. We cannot avoid the conclusion, therefore, that the order in question restricted the defendant unduly in the exercise of his right to be heard; as it stands, he would find great difficulty in putting an expert on the stand, and practically he could call no other witness than himself. At all events, he would be so hampered that little freedom would remain. We make no suggestion about the manner of conducting the trial; it is not for us to offer advice on this subject, and we are sure that the trial judge will continue to act with the scrupulous care and caution he has already displayed. But the order before us is too sweeping, and should be modified in accordance with this opinion. Our knowledge of the situation is necessarily imperfect, and we cannot undertake to do more than state the foregoing rules. Before the mandate issues, perhaps the parties may be able to agree on details; if not, we are compelled to commit the subject of modification to the court below, and as already stated the manner of conducting the trial must be left in large measure to the discretion of the trial judge. We will only add that we repose implicit confidence in the honor of the defendant and his counsel that in the preparation and the conduct of his side of this difficult case they will impress strongly on such of their witnesses as must of necessity learn something of the subject-matter the serious obligation these witnesses assume to preserve inviolate the secrecy of these processes until their true character shall be finally determined. If they turn out to be really secrets the power of the district court should be exercised, and

no doubt will be exercised, without hesitation to give them adequate protection; if they are really open to the world no harm will have been done, but it appears to be inevitable that to some extent a preliminary disclosure must be permitted.

The decrees of March 26 and of April 13 are reversed.