HISEL v. CHRYSLER CORP. et al.

HISEL v. CHRYSLER CORP.

No. 6288, 6382.

United States District Court
W. D. Missouri, W. D.

Jan. 18, 1951.

Charles Shangler, Donald L. Randolph, Kansas City, Mo., for plaintiff.

Blackmar, Newkirk, Eager, Swanson & Midgley, Roy P. Swanson, and Charles B. Blackmar, all of Kansas City, Mo., and Harness, Dickey & Pierce, Arthur W. Dickey, and J. King Harness, all of Detroit, Mich., for defendants.

RIDGE, District Judge.

The claims asserted by plaintiff against the several defendants in the above actions present a common question of law and fact. Defendants have moved, in each of said actions, for summary judgment under Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A. The complaints therein charge that "in faith and confidence, upon the invitation of the defendant Chrysler Corporation, which is the parent corporation of defendants Chrysler Sales Corporation, and Chrysler Motor Parts Corporation, (plaintiff) disclosed to defendant Chrysler Corporation the secret nature" of an idea and invention claimed to be original with him, relating to improvements in motor cars, particularly as to the manner of placing and guarding license plates thereon. Plaintiff claims damages from defendants for, "wrongfully and in breach of said faith and confidence," having "appropriated and converted to their own use said invention without the consent of the plaintiff * * * thereby depriving plaintiff of profits and other fruits of his invention." Answers filed by defendants deny generally the claims so asserted and allege specific affirmative defenses thereto. From the pleadings and admissions on file, the following undisputed facts clearly appear:

December 20, 1939, plaintiff sent to defendant Chrysler Corporation a letter, inviting attention to an idea he had concerning the appearance of new cars which he claimed would improve the charm and beauty thereof. The idea was not disclosed in that letter. Under date of January 9, 1940, Chrysler Corporation sent to plaintiff a letter, acknowledging receipt of his letter and calling attention to the "policy of Chrysler Corporation in regard to new ideas" and enclosed therewith a document so entitled, outlining such policy. Said document is as follows:

"It has always been the policy of the Chrysler Corporation to encourage and develop all such improvements for its products as will tend to produce better vehicles at the lowest possible price. During the years of its existence, the Chrysler Corporation has made use of and paid royalties for a large number of inventions which have been submitted to it by persons outside the Corporation. We like to feel that we give equally as much, if not more, consideration to the idea which is submitted to us from outside our Corporation as we do to the idea which is submitted to us by our own engineers.

"As a result of this policy, thousands of ideas are submitted to us each year. They come from people in all walks of life and of every temperament and disposition. To each of them we attempt to give courteous and considerate attention so that those ideas which have merit "in our business may be brought to the attention of the proper persons in our organization.

"Because of the number of suggestions which come to us, containing both old and new ideas, and the different types of people with whom we have to deal, it is necessary, before we receive and consider any suggestion, that we prescribe certain conditions upon which we will receive and consider the suggestion. Briefly, these are:

"1. Chrysler Corporation is willing to consider any suggestion which may be made but does so only at the request of the person who has the suggestion.

"2. No obligation of any kind is assumed by, nor may be implied against, the Chrysler Corporation unless or until a formal written contract has been entered into and then the obligation shall be only such as is expressed in the formal written contract.

"3. You do not give Chrysler Corporation any rights under any patents you now have or may later obtain covering your suggestion but do, in consideration of its examining your suggestion, release it from any liability in connection with your suggestion or liability because of use of any portion thereof, except such liability as may accrue under valid patents now or hereafter issued."

Also enclosed with said letter was a form prepared by Chrysler Corporation, addressed to its Engineering Improvements Committee, for execution by plaintiff, providing for the identification of the idea he wished to submit for consideration by Chrysler Corporation, and setting forth the

conditions under which the Corporation was to consider it.

About a year later, on December 31, 1940, without intervening events occurring, plaintiff sent a letter to Chrysler Corporation, explaining an idea, which he claimed to be original with him, relative to the placing of a license plate for an automobile in a 1-inch-deep waterproof metal box, covered with a glass, inserted into the right or left front fender thereof; and, the insertion of a rear license plate in a similar metal box inserted in the center of the trunk compartment or turtleback of an automobile, just above the handle. Plaintiff enclosed therein a sketch illustrating his idea and the location on an automobile of such a device. January 3, 1941, Chrysler Corporation sent to plaintiff a letter acknowledging receipt of plaintiff's letter of December 31, 1940, and stated that Chrysler Corporation had not received an executed copy of the agreement under which it would be willing to consider his idea; and called plaintiff's attention to the fact that a form of such an agreement had been forwarded to plaintiff with its letter of January 9, 1940. On January 27, 1941, plaintiff executed and mailed the form agreement last above referred to, which was received by Chrysler Corporation on January 30, 1941. In that agreement, plaintiff identified his idea as "Inserted license-plate holder. The front plate is inserted in front fender in glass-covered, insulated, metal box; the rear plate in trunk compartment in a like box." After so identifying his idea, the following is contained in said agreement over plaintiff's signature:

"I have been informed by your representatives that you are willing to consider all suggestions which may be made to you by persons outside of your Corporation, but that because of the large number of such suggestions, containing both old and new ideas, which are submitted from people in all walks of life and of every temperament and disposition, you require the acceptance by me of certain conditions before considering my suggestion. These conditions are:

"1. Chrysler Corporation is willing to consider any suggestion which may be made' but does so only at the request of the person who has the suggestion.

"2. No obligation of any kind is assumed by, nor may be implied against, the Chrysler Corporation, unless or until a formal written contract has been entered into, and then the obligation shall be only such as is expressed in the formal written contract.

"3. I do not hereby give Chrysler Corporation any rights under any patents I now have or may later obtain covering my suggestion but I do hereby, in consideration of its examining my suggestion, release it from any liability in connection with my suggestion or liability because of use of any portion thereof, except such liability as may accrue under valid patents now or hereafter issued.

"I am agreeable to these conditions and ask you to consider my suggestion under them."

February 13, 1941, Chrysler Corporation sent a letter to plaintiff, acknowledging receipt of said agreement and advising plaintiff that his idea for a license-plate holder had been discussed with its engineers, and stated "that the idea is not new to them since others have submitted similar plans in the past." Six years thereafter, on April 14, 1947, plaintiff sent another letter to Chrysler Corporation, again explaining and calling to its attention his idea for mounting license-plates, and stating that the explanation therein contained "has been copywrighted." The "explanation of device" contained in that letter is identical with that contained in plaintiff's previous letter of December 31, 1940, and makes reference thereto. April 18, 1947, Chrysler Corporation acknowledged receipt of said letter from plaintiff, and stated that it was not at present in a position to give consideration to the type of license-plate holder which plaintiff suggested, and expressed the thought to plaintiff as to "whether the idea you suggest is patentable in view of the many similar suggestions which have been made by others." It is admitted that the foregoing correspondence is all the communication that ever passed between plaintiff and defendant relating to the disclosure

by plaintiff, to Chrysler Corporation, of plaintiff's idea for mounting license-plates on automobiles.

The answers of defendants in the above actions specifically aver that the alleged idea claimed by plaintiff with respect to the mounting of license-plates was commonly known in the automobile trade and was in the public domain and available for free use by the public long prior to any alleged origination thereof by plaintiff, and prior to any disclosure made by plaintiff to defendants. In the answers, specific reference is made to certain expired United States Letters Patent and to pictures, drawings and articles appearing in various trade journals, published and circulated among members of the automobile industry in the United States and foreign countries as far back as the year 1926. From exhibits submitted herein, the uncontroverted fact is revealed that on December 29, 1914, United States Letters Patent, Number 1,122,279, were issued to one Walter H. Juan, for improvement in license-plate holders, consisting of a "casing adapted to be mounted in a recess in an automobile body" with a means for "holding a license plate in such control chamber" and a "casing having an uncolored transparent panel" covering the chamber, and a lamp therein, so that the license-plate may be readily visible; that on the 30th day of August, 1938, United States Letters Patent, No. 2,128,679, were granted to Valeria E. Kielian, of Silver Creek, Nebraska, for an illuminated license-plate holder, in which claim was allowed for: "A license-plate holder for automobiles, comprising a frame having a transparent pane therein and adapted to be mounted in the rear wall of an automobile, a hood anchored on the inside of said frame and adapted to carry therein a license-plate facing the transparent pane in said frame, and a source of illumination mounted in one end of the hood in an angularly forward position with respect to the license-plate for reflecting the surface characters on said plate through said transparent pane."

Five other similar claims were made and allowed, also in the last-mentioned letters patent. On January 4, 1938, United States Letters Patent, No. 2,104,539, were issued to one W. Hacker for improvements in motor cars, in which eleven claims are made, in combination, for the insertion of a license-plate located in a depression of a car body wall, and a casing located therein just above the handle of a turtle-back, for the purpose of holding and illuminating a license-plate.

From an examination of the drawings, specifications and claims of the above-referred-to letters patent, it is obvious that the claim of invention here made by plaintiff was fully anticipated by the claims allowed in said letters patent. Plaintiff here does not make claim of ever having applied for or obtaining any letters patent from the United States covering his idea and claim to invention of the device here considered. Neither by affidavit nor by pleading does plaintiff challenge the validity of the foregoing letters patent, cited as prior art in defendants' answers, certified copies of which are contained as exhibits in the affidavits filed by defendants.

■ Examination of the specifications and drawings of the above letters patent, considered in relation to the idea and claim to invention expressed and described in the letters and documents forwarded to Chrysler Corporation by plaintiff, reveals without question, that plaintiff's idea was anticipated by the grant of the claims allowed in the above-referred-to letters patent. So obvious is such fact that it may be said to be readily observable by one though he might not be accustomed to reading and considering letters patent from a technical standpoint. Similarly, from the other prior art, identified in the affidavits filed by defendant as being trade publications published and circulated throughout the United States in the automobile industry, it is revealed that as early as the year 1926, devices for the insertion of license-plates within the body and fenders of an automobile were commonly known and used in the automobile industry. An examination of the sixteen publications so cited reveals that every feature of the idea and invention here claimed by plaintiff as being original with him was anticipated

long prior to the time of any alleged disclosure by plaintiff of his idea to defendants. So apparent and so obvious is the fact that we do not perceive how plaintiff could legally contend that such prior art is not in anticipation of the idea and invention claimed by him. Such articles describe streamlined body car designs, with illuminated license-plates, countersunk into the front and rear parts of the body of an automobile in various locations thereon. From an examination thereof, we are led to believe that, regardless of the presumption of validity attending the claims made in the letters patent above referred to, as allowed by the United States Patent Office, the prior art revealed in said trade publications, and attached as exhibits to the affidavits filed herein in support of the motions for summary judgment, it is patently established that the idea, originality of which is claimed by plaintiff as an invention herein, is wholly destroyed and that the originality thereof cannot be said to be resident in plaintiff.

Other facts are revealed in the affidavits filed concerning the manner and means defendants have used and adopted for the mounting of license-plates on various models of automobiles produced by them since the year 1947. From the issues raised and presented by the pleadings, and the above-related undisputed facts, we do not consider such matter necessary to a decision on the instant motion for summary judgment. Consequently, we shall not encumber this opinion by a detailed consideration thereof.

The issue raised and presented by the pleadings herein presents the proposition whether, under the foregoing state of facts, plaintiff "in faith and in confidence" disclosed to Chrysler Corporation "the secret nature" of an idea and invention claimed by him, under such circumstances that the Corporation should, in good conscience and fair dealing, be prohibited from making further disclosure thereof, or making use of any novelty contained in plaintiff's claimed idea or invention without additional consent and approval of the plaintiff. To sustain a right of action in plaintiff under the facts here involved, it is incumbent upon plaintiff to establish that he disclosed to Chrysler Corporation an idea or invention, in faith and confidence, in which idea he had a property right, and that the defendants are making use of his idea in bad faith and in breach of such confidence. If under the undisputed facts of this case it is clearly established that no confidential relationship can be said to exist between plaintiff and the defendants at the time plaintiff alleges he disclosed to Chrysler Corporation any idea possessed by him as alleged in the complaint, and that plaintiff could not legally have bound the defendant Chrysler Corporation to any such obligation, then no right of action can be said to here exist in plaintiff, and under such circumstances we believe summary judgment is the appropriate remedy for disposing of the claim here asserted by plaintiff against all the defendants. Cf. Steigleder v. Eberhard Faber Pencil Co., 1 Cir., 176 F.2d 604; Davison Chemical Corp. v. Joliet Chemicals, Inc., 7 Cir., 179 F.2d 793.

When plaintiff divulged his idea and suggestion to Chrysler Corporation, for the mounting of license-plates on automobiles, it is apparent that plaintiff was fully informed of the "policy of the Chrysler Corporation in regard to new ideas" and the conditions under which that corporation would receive and consider the same. Being so informed, plaintiff disclosed his idea to Chrysler Corporation and executed an agreement compatible with that policy by which he agreed that if Chrysler Corporation would examine his suggestion he would "release it from any liability in connection with (the) suggestion, or liability because of use of any portion thereof, except such liability as may accrue under valid patents now or hereafter issued." Therefore, the relationship existing between plaintiff and defendant Chrysler Corporation, as at issue in this action, is to be determined from the legal effect to be given to the provisions of such agreement. Said agreement is unambiguous in its terms. Consequently, the construction and legal effect to be given thereto is a question of law to be decided

1002

by the Court. National Surety Corp. of New York v. Ellison, 8 Cir., 88 F.2d 399.

■ The clear intent, manifest in the above agreement, is repugnant to any implication of confidential relationship existing between plaintiff and Chrysler Corporation as here contended. By said agreement, Chrysler Corporation cannot be held to have established a relationship of "trust and confidence." Before it acceded to plaintiff's request to consider the idea or suggestion plaintiff says he divulged to them, that Corporation made known to plaintiff its policy relative thereto and requested plaintiff to execute an agreement setting forth the conditions under which it would do so. Therefore, rather than establishing a relationship of "trust and confidence," such matters reveal that Chrysler Corporation was dealing with plaintiff at arm's length and was not negotiating with him in such a manner as to bind it in respect to any information disclosed to it by plaintiff, even though it made use thereof, unless a valid patent was issued thereon. Under the facts shown in evidence, the law will not imply a promise on the part of Chrysler Corporation not to make use of said idea, or cast a liability on it by implication of a confidential relationship such as we would be compelled to do to sustain a right of action existing in favor of plaintiff. Even though defendants may be shown to be making use of plaintiff's claimed idea, "they are not indebted to plaintiff, because they did not offer (or) make any agreement to pay for such (idea)" if they used it, unless it was patentable. Lueddecke v. Chevrolet Motor Co., 8 Cir., 70 F. 2d 345, 348; Moore v. Ford Motor Co., D. C., 28 F.2d 529.

■ Even in the absence of the provisions of the aforesaid agreement, we do not believe that plaintiff can legally sustain a claimed relationship of "trust and confidence" existing between the parties as here alleged under the undisputed facts before the Court. To do so, plaintiff would be required to establish by competent proof that the idea he says he divulged to Chrysler Corporation was embraced in some "novelty." If such idea was not novel, but was concerning a subject-matter previously revealed by expired patents, and publications known to those engaged in the automotive industry, then it was knowledge which may be said to be in the public domain, and as to which a binding obligation of "trust and confidence" could not be created as here contended. In Smoley v. New Jersey Zinc Co., D.C., 24 F.Supp. 294, 300, it is said: " * * * A duty not to use an idea already known cannot be created by virtue of the fact that one makes a confidential disclosure of that idea. Masland v. E. I. Du Pont de Nemours Powder Co., 3 Cir., 224 F. 689, 693, reversed on other grounds, 244 U.S. 100, 37 S.Ct. 575, 61 L.Ed. 1016. If the rule were not so restricted it is obvious that by disclosing an idea under delusions of confidence, the person making the disclosure could thereafter prevent the confidante from subsequently making use of it, even though the idea was well-known prior to the date of the disclosure and open to the use of all others in the world."

■ As above revealed, when plaintiff made disclosure of his claimed idea to Chrysler Corporation, the insertion of license-plates in a metal container depressed in the body of an automobile was old in the automotive industry and had been known and anticipated by issuance of three previous letters patent, and several publications of wide circulation. The claims of the letters patent referred to clearly establish that all the features of the idea plaintiff here must prove was original with him could not be legally so claimed by plaintiff. An idea, or device, the subject of previously granted and expired letters patent and having the status of facts known to the world, does not contain any novelty, whether considered from the standpoint of patentability or otherwise. Scott Paper Co. v. Marcalus Mfg. Co., Inc., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47; Toledo Pressed Steel Co. v. Standard Parts, etc., 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334. Without novelty being resident in the idea plaintiff divulged to Chrysler Corporation, that Corporation was not bound to keep such idea secret, or not to make use thereof, regardless of any claim of

"trust and confidence" which plaintiff alleges he reposed in that defendant. Plaintiff makes no attempt to reveal any facts surrounding the parties hereto that would establish a relationship of "trust and confidence" such as were shown to exist, in Allen-Qualley Co. v. Shellmar Products Co., D.C., 31 F.2d 293, from which a court of equity might infer that such a relationship could be said to be present. That plaintiff cannot do so at any trial of this cause is apparent by his admission of record that the only communications he ever had with Chrysler Corporation relative to the subject-matter of this action are as set forth in the above statement of facts. Such communications dispel any inference of a "trust and confidence" relationship between plaintiff and Chrysler Corporation as here charged. No such relationship having been established between those parties, plaintiff cannot, under the allegations of the instant complaints, show that any such relationship existed between him and the other defendants herein. The relationship of "trust and confidence" here claimed by plaintiff against all defendants is wholly dependent upon the legal effect to be given to the communications passing between plaintiff and defendant Chrysler Corporation.

Plaintiff's opposition to the instant motion for summary judgment is (1) that the Court is required to accept the allegations of the complaint as true; (2) that the affidavits and exhibits filed in support of said motion are not a proper method for determining the real facts in issue in this action; and (3) that a party opposing a motion for summary judgment should not be forced to reveal his evidence before trial.

■ In 3 Moore's Federal Practice (1938), 3174-5, it is said: " ' * * The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial.' To attain this end, the rule permits a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried." Such text, supported as it is by substantial authority, is a complete answer to plaintiff's first point, and we think it correctly states the proper office of a motion for summary judgment. Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318, 322; Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469.

■ As to plaintiff's second point. The affidavits and exhibits herein reveal that no genuine and substantial dispute can possibly exist as to the facts, a consideration and determination of which are dispositive of the issues herein. Plaintiff makes no attempt to show otherwise. The facts here revealed clearly establish the relationship between the parties at the time of the occurrence in question and if proven at the trial of this action, as they certainly can be, would necessitate the sustaining of a motion for a directed verdict. Said facts so established and considered from that standpoint, are sufficient to support a motion for summary judgment herein. Ramsouer v. Midland Valley R. Co., 8 Cir., 135 F.2d 101, 105-106; Geller v. Trans-America Corp., D.C., 53 F.Supp. 625; affirmed, 3 Cir., 151 F.2d 534.

■ Plaintiff's third point, that he is not required to make disclosure of his evidence before trial, cannot be sustained, else the provision of Rule 56, supra, would be wholly disregarded. As said by Judge Charles E. Clark, in Engl v. Aetna Life Ins. Co., supra, 139 F.2d at page 473: "If one may * * * reserve one's evidence when faced with a motion for summary judgment there would be little opportunity * * * to determine that the issues formally raised were in fact sham or otherwise unsubstantial."

■ Plaintiff's failure to controvert the subject-matter of the affidavits and exhibits filed herein in support of the motions for summary judgment "requires rejection of (his) contention that there (may be) a substantial question of 'fact'" in dispute. Stahly, Inc., v. M. H. Jacobs Co., Inc., 7 Cir., 183 F.2d 914, 916; Sartor v. Arkan-

**1004**

sas Natural Gas Corp., 5 Cir., 134 F.2d 433; Gifford v. Travelers Protective Ass'n of America, 9 Cir., 153 F.2d 209.

Defendants' motions for summary judgment in each of the above actions are sustained and the complaints therein should be dismissed. It is so ordered.