## MARION COUNTY CO-OP. ASS'N v. CARNATION CO.

Civ. No. 344.

United States District Court
W. D. Arkansas, Harrison Division.
Aug. 18, 1953.

Luther Cavaness, Yellville, Ark., Gideon H. Schiller, Sievers, Reagan & Schwartz, St. Louis, Mo., for plaintiff.

Hardin, Barton, Hardin & Garner, Fort Smith, Ark., for defendant.

JOHN E. MILLER, District Judge.

On October 8, 1952, plaintiff filed its complaint against the defendant and alleged the following facts:

Plaintiff is an Arkansas corporation, defendant is a Delaware corporation, and jurisdiction is conferred upon the Court by Title 15 U.S.C.A. §§ 1–15.

"That in and about Marion County, Arkansas, there has existed for many years prior hereto and does presently exist a milk producing area or shed, which shed produced Grade 'C' raw milk which is used in the manufacture of dairy products; that both the plaintiff and the defendant each maintained a dairy products plant, and in connection therewith each party engaged in buying raw milk from the producers in the shed, manufacturing products therefrom and selling the products in interstate commerce."

The defendant, Carnation Company, operates numerous dairy products plants throughout the United States and has substantial assets and a large volume of sales; plaintiff operated a small enterprise with assets and sales of less than one per cent of the amount of defendant's assets and sales.

"6. That sometime in the fall of 1951 and at other times unknown to the plaintiff, the defendant, Carnation Company, by and through its officers, managers and agents, conceived a plan and scheme for obtaining unlawful control, monopoly and corner of the aforesaid milk shed, restricting interstate commerce and trade thereby, which plan or scheme was put into effect by the defendant commencing in the fall of 1951 and consisted of the establishment and maintenance of a 'fictitious price'; that the said 'fictitious price' consists of payments for raw milk to producers in the said shed which (a) were in excess of the usual and normal prices paid in the said milk shed in the normal course of business; and (b) resulted in a loss to the defendant on the sale of its products manufactured from raw milk purchased in the said shed at the said price; and (c) were calculated to result in a loss to any other purchasers, including the plaintiff herein, of raw milk in the said shed, meeting the said 'fictitious price' established and maintained by the defendant.

"7. That the plaintiff met the 'fictitious price' of the defendant at the time of its institution thereof by the defendant but was unable to continue to meet the said price, and that by reason thereof it lost its patrons, suffered financial losses, and did thereby cause the destruction of its business.

"8. That the 'fictitious price', plan and scheme of the defendant was by reason of the premises contrary to and in violation of Sections 1 and 2 of Title 15 U.S.C.A. in these respects: (a) That the plaintiff was eliminated as a competitor of the defendant; and (b) That the defendant was put in position to unlawfully control, monopolize and corner a large portion of the purchases of raw milk in and about the said shed, all in restriction of interstate trade and commerce and in unlawful interference with the plaintiff's business."

The plaintiff suffered damages as a result of the defendant's plan and scheme and prays judgment against the defendant for damages, attorney's fee, and costs.

The defendant was granted additional time in which to answer or otherwise plead, and on February 2, 1953, filed its motion to dismiss under Rule 12(b)(6), F.R.C.P., 28 U.S.C.A., or in the alternative, for summary judgment under Rule 56, F.R.C.P. The attorneys for the respective parties have filed briefs in support of and in opposition to the motion, and also a substantial number of affidavits and depositions have been filed, and the motion is now before the Court for disposition.

With regard to its motion to dismiss, defendant contends that the complaint fails to state a claim upon which relief can be granted because (1) there is no allegation of a contract, combination or conspiracy to bring the complaint within the purview of Section 1 of the Sherman Anti-Trust Act, and (2) no violation of Section 2 of the Act is alleged in that plaintiff has failed to allege that the defendant had the intent or power to monopolize, or that the consumer market was monopolized and the general public injured, or that the defendant had monopolized or was attempting to monopolize any part of interstate commerce. As to its motion for summary judgment, defendant contends that the affidavits and depositions on file show conclusively that no "fictitious price" was paid by defendant and that its prices were entirely competitive, and that no violation of

the Sherman Anti-Trust Act could be shown.

On the other hand, the plaintiff contends that there may be a conspiracy among officers and agents of a corporation and the corporation itself, and that it has sufficiently alleged such a conspiracy in violation of Section 1 of the Act. The plaintiff also contends that it has sufficiently alleged the power and intent of the defendant to monopolize and that the defendant had attempted to monopolize a part of interstate commerce. Plaintiff further contends that it is unnecessary to allege a monopoly of the consumers' market or injury to the general public. As to the motion for summary judgment, the plaintiff contends that "Nowhere in the motion for summary judgment are the allegations of Paragraphs Six and Eight (of the complaint) negatived," and that a genuine issue of fact exists.

The Court will first consider the defendant's motion to dismiss. Defendant's first contention, i. e., that the complaint does not state a cause of action within the purview of Section 1 or the conspiracy portion of Section 2 of the Sherman Anti-Trust Act, is well founded.

Section 1 of the Act provides:

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *."

Section 2 of the Act provides in part:

"Every person who shall * * * combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *."

The plaintiff contends that the following allegation states a conspiracy within the coverage of the above quoted portions of the Act:

"That sometime in the fall of 1951 and at other times unknown to the plaintiff, the defendant, Carnation Company, by and through its officers,

managers and agents, conceived a plan and scheme for obtaining unlawful control, monopoly and corner of the aforesaid milk shed * * *."

In its brief plaintiff argues that "Common sense dictates that a corporation acts by and through its officers and agents. The officers and agents of a corporation may be named as co-conspirators with the corporation. Kentucky-Tennessee Light & Power Co. v. Nashville Coal Co. [D.C.], 37 F.Supp. 728."

The case relied upon by plaintiff in no wise supports its contention. All that case holds is that the liability of a principal does not preclude the personal liability of the agent who performed the prohibited acts (In that case, the alleged payment of illegal commissions contrary to the Robinson-Patman Act). The Court, at page 783 of 37 F.Supp., said:

"It is a well-established rule of principal and agent that an agent is liable for his own tortious acts even though performed within the scope of his employment, and under conditions which impose liability upon the principal also. * * * If the payments of the commissions to Fitch by the Coal Company are illegal under the Robinson-Patman Act, such violation of the law is also charged to the defendant Potter who authorized the payments and made them as agent of the corporation. This brings Potter, as well as the Coal Company, within the civil liabilities provided by Section 4 of the Act, which gives a cause of action by reason of anything forbidden in the anti-trust law."

Not only does the above cited case fail to sustain plaintiff's contention, but, in fact, the cases uniformly hold that a conspiracy cannot exist between a corporation and its officers and agents. Perhaps the clearest holding on this point is the case of Nelson Radio & Supply Co., Inc., v. Motorola, Inc., 5 Cir., 200 F.2d 911, at page 914, certiorari denied in 345 U.S. 925, 73 S.Ct. 783, wherein the Court said:

"It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. Here it is alleged that the conspiracy existed between the defendant corporation, its president, Calvin, its sales manager, Kelly, and its officers, employees, representatives and agents who have been actively engaged in the management, direction and control of the affairs and business of defendant. This is certainly a unique group of conspirators. The officers, agents and employees are not named as defendants and no explanation is given of their non-joinder. Nor is it alleged affirmatively, expressly, or otherwise, that these officers, agents, and employees were actuated by any motives personal to themselves. Obviously, they were acing only for the defendant corporation. It is true that the acts of the corporate officers may bring a single corporation within Section 2 of the Sherman Act, which covers an attempt to monopolize, but this is not because there exists in such circumstances, a conspiracy to which the corporation is a party. * * *

"In the absence of any allegation whatever to indicate that the agents of the corporation were acting in other than their normal capacities, plaintiff has failed to state a cause of action based on conspiracy under Section 1 of the Act."

In Timken Roller Bearing Co. v. United States, 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199, in a dissenting opinion Mr. Justice Jackson at page 606 of 341 U.S. at page 979 of 71 S.Ct. said:

"Thus, although a single American producer, of course, would not compete with itself, either abroad or at home, and could determine prices and allot territories with the same effect as here, that would not be a violation of the Act, because a corporation cannot conspire with itself."

See also, Times-Picayune Publishing Co. v. United States, 345 U.S. 594, 626, 73 S.Ct. 872; United States v. Lorain Journal Co.,

D.C.Ohio, 92 F.Supp. 794, 799–800, affirmed in 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162; Windsor Theatre Co. v. Walbrook Amusement Co., D.C.Md., 94 F.Supp. 388, affirmed in 4 Cir., 189 F.2d 797.

The above quoted authorities completely refute plaintiff's contention and establish beyond doubt the principle that a violation of Section 1 and the conspiracy portion of Section 2 of the Sherman Anti-Trust Act cannot be committed by a corporation and its officers and agents when said officers and agents are acting for the corporation in the ordinary scope of their duties.

In the instant case plaintiff makes no intimation that the officers and agents were acting in other than their normal capacities, and therefore the complaint does not state a claim under Section 1 or the conspiracy portion of Section 2 of the Sherman Anti-Trust Act.

Thus it is evident that if plaintiff has stated a claim upon which relief can be granted, it necessarily must be a claim bottomed upon that portion of Section 2 of the Act which provides as follows:

"Every person who shall monopolize, or attempt to monopolize * * * any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *."

The allegations of the complaint are set out fully hereinbefore. They are general and somewhat vague, but, giving the complaint an extremely broad and liberal construction, the Court hesitates to say that it fails to state a claim upon which relief can be granted, and in the consideration of the alternative motion for summary judgment the Court assumes that the complaint does state a claim under Section 2 of the Act.

The real question in the case is whether the defendant is entitled, upon the record, to a summary judgment in its favor. Rule 56(c), F.R.C.P., provides in part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

In determining whether such a judgment should be entered in the instant case, the Court feels that the principles of law pertaining to summary judgments should be set forth fully and considered. The Court of Appeals for this Circuit has passed upon most phases of the summary judgment rule, and the following quotations demonstrate the established scope of the rule in this Circuit:

"On a motion for a summary judgment the burden of establishing the nonexistence of any genuine issue of fact is upon the moving party, all doubts are resolved against him, and his supporting affidavits and depositions, if any, are carefully scrutinized by the court. The object of the motion is to separate the formal from the substantial issues raised by the pleadings, and the court examines evidence on the motion, not to decide any issue of fact which may be presented, but to discover if any real issue exists. * * * When affidavits are offered in support of a motion for summary judgment, they must present admissible evidence, and must not only be made on the personal knowledge of the affiant, but must show that the affiant possesses the knowledge asserted." Walling v. Fairmont Creamery Co., 8 Cir., 139 F.2d 318, 322.

"That one reasonably may surmise that the plaintiff is unlikely to prevail upon a trial, is not a sufficient basis for refusing him his day in court with respect to issues which are not shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them." Sprague v. Vogt, 8 Cir., 150 F.2d 795, 801.

"If it appears from the pleadings, affidavits, admissions or depositions that there is no genuine issue as to any material fact and that the issue is one of law, then if the law so warrants a summary judgment should be entered. The question of the sufficiency of the

evidence raises an issue of law and if, under the facts, the court would be required to direct a verdict for the moving party, then a summary judgment should be granted. * * * Here an affirmative defense was pleaded by defendant. If established, it presented for determination a question of law. The complaint alleged the issuance of the patent to plaintiff. It did not allege that plaintiff was the owner of the patent although that presumption might arise from its issuance. It appears without dispute that he assigned in writing an interest in this patent. The assignee made affidavit that the assignment had never been revoked, that he had never transferred nor disposed of the interest which he received under this assignment but that he was the present holder and owner thereof and that the assignment was in full force and effect. On this issue raised by the affirmative defense, the court, had the case been submitted on the merits, would on motion have been required to direct the verdict in favor of the defendant. The fact of the assignment being established by undisputed and unimpeached evidence, it remains to consider whether or not plaintiff, notwithstanding the assignment, was entitled to maintain the suit." Hurd v. Sheffield Steel Corp., 8 Cir., 181 F.2d 269, 271.

"A summary judgment upon motion therefor by a defendant in an action should never be entered except where the defendant is entitled to its allowance beyond all doubt. To warrant its entry the facts conceded by the plaintiff, or demonstrated beyond reasonable question to exist, should show the right of the defendant to a judgment with such clarity as to leave no room for controversy, and they should show affirmatively that the plaintiff would not be entitled to recover under any discernible circumstances. * * * A summary judgment is an extreme remedy, and, under the rule, should be awarded only when the truth is quite clear. * * * And all reasonable doubts touching the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment." Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 189 F.2d 213, 216.

"It was not the purpose of this rule to require a party to try his case on affidavits with no opportunity to cross-examine witnesses; in fact, only in a rare case can it be determined by affidavit that the evidence available will be such as to entitle the movant, if the case were tried on its merits to a jury, to a directed verdict because there has been no opportunity to cross-examine the witnesses." Dulansky v. Iowa-Illinois Gas & Electric Co., 8 Cir., 191 F.2d 881, 883.

"A surmise or belief, no matter how reasonably entertained, that a party cannot prevail upon a trial, will not justify refusing him his day in court with respect to material issues which are not clearly shown to be sham, frivolous, or so unsubstantial that it would obviously be futile to try them. * * * It has become settled law that a genuine issue as to a material fact cannot be tried and determined upon affidavits, and that it must conclusively be shown that there is no such issue in the case and that the moving party is entitled to judgment as a matter of law, before a summary judgment can lawfully be entered." Ford v. Luria Steel & Trading Corp., 8 Cir., 192 F.2d 880, 882.

"There may however, be a formal issue presented by the pleadings but shown by affidavit or otherwise not to be genuine. * * * An issue of fact is not genuine unless it has legal probative force as to a controlling issue, 35 C.J.S., Federal Courts, § 144, p. 1205. The motion for summary judgment is not a trial of the issues but for the purpose of determining whether in fact there are any genuine issues as to material facts. If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as

to the controlling material facts, then the court should enter summary judgment." Durasteel Company, Inc., v. Great Lakes Steel Corporation, 8 Cir., 205 F.2d 438.

As heretofore stated, a substantial number of affidavits and depositions have been filed in support of the motion for summary judgment, and before granting the motion the Court must examine the affidavits and depositions, not for the purpose of deciding any issue of fact, but to determine whether any real issue exists. If, from the affidavits and depositions there appears to be no genuine issue as to any material fact and that the sole issue is one of law, then if the law so warrants a summary judgment should be entered. In determining the question it must be borne in mind that ordinarily there has been no opportunity to cross-examine the affiants, although that is not true as to deponents, and only in a rare case can it be determined by an examination of affidavits that the evidence available will be such as to entitle the movant to a directed verdict in the event of a trial. A Court should be careful not to deprive a party of his day in Court, but if the material before the Court discloses clearly that the issues are sham, frivolous, or so unsubstantial that it would obviously be futile to try such issues, then a summary judgment should be entered. In such a case, there would be no genuine issue of fact and the movant would be entitled to a judgment as a matter of law.

The essence of plaintiff's claim is stated in paragraphs six and eight of the complaint, heretofore set forth verbatim. The gist of plaintiff's claim is that defendant paid milk producers prices "in excess of the usual and normal prices paid in the said milk shed in the normal course of business," and that such action was calculated to cause a loss to other purchasers and to enable defendant to obtain a monopoly. Thus, if it is conclusively shown that prices paid by the defendant were not in excess of the usual and normal prices paid in the normal course of business, plaintiff has no claim upon which relief can be granted.

Among others, the defendant has filed affidavits executed by the following persons:

T. E. Ewing, Superintendent of the Mt. Vernon, Missouri, area of Carnation Company; R. L. Moore, General Manager at Aurora, Missouri, of the Standard Milk Company; L. A. Gaylen, General Manager of the Seven Valleys Cheese Company, at Anderson, Missouri; Jim Wise, owner of Twin Lakes Dairy at Mountain Home, Arkansas; L. M. Multer, Assistant General Superintendent of the Southwest District, Evaporated Milk Division, Carnation Company; Leslie L. Hunt, Director of the Field Department of the Pet Milk Company.

Defendant has also filed the depositions of the following persons:

Wesley S. Johnson, Treasurer of the Producers Creamery Company of Springfield, Missouri; Harold E. Johnson, Senior Costs Accountant for Kraft Foods Company; John A. Pence, Plant Manager of the Milnot Company at Seneca, Missouri.

The plaintiff has filed the depositions of the following persons:

Frank L. Reynolds, District Superintendent of Pet Milk Company; L. A. Gaylen, owner of the Seven Valleys Cheese Company; T. E. Ewing, Superintendent of the Mt. Vernon, Missouri, area of Carnation Company; L. M. Multer, Assistant General Superintendent of the Southwest District, Evaporated Milk Division, Carnation Company.

The aforesaid affidavits and depositions, which were based upon the personal knowledge of the affiants and deponents, disclose that the defendant operates receiving stations at Mt. Vernon, El Dorado Springs, Ava, Seymour and Neosho, all in the State of Missouri; Girard, Kansas; and Harrison and Rogers, Arkansas. In the area as a whole, defendant has a number of competitors, including Pet Milk Company, Kraft Foods, Milnot Company, Producers Creamery, Standard Milk Company, Seven Valleys Cheese Company, and Twin Lakes Dairy. At the Harrison, Arkansas, receiving station, Kraft Foods, Branson Cheese, Marion County Cooperative Ass'n (Until

about April 22, 1952, when it ceased doing business), and Gainesville Cheese Company (since the spring of 1952), are competitors of defendant and have been since prior to January 1, 1949, except as above noted. At the Rogers, Arkansas, receiving station, defendant's competitors are and have been Kraft Foods, Pet Milk Company, Milnot Company, and Seven Valleys Cheese Company.

The affidavits and depositions further disclose that during the period complained of by the plaintiff, the defendant paid the following prices for raw milk throughout the Mt. Vernon area:

| | | First Half | Second Half |
|------|-------|------------|-------------|
| 1951 | Sept. | $3.75 | $3.75 |
| | Oct. | 3.75 | 3.85 |
| | Nov. | 3.90 | 4.00 |
| | Dec. | 4.05 | 4.25 |
| 1952 | Jan. | 4.25 | 4.45 |
| | Feb. | 4.55 | 4.55 |
| | Mar. | 4.50 | 4.50 |
| | Apr. | 4.35 | 4.25 |
| | May | 4.15 | 4.15 |
| | June | 4.15 | 4.15 |
| | July | 4.15 | 4.15 |
| | Aug. | 4.15 | 4.25 |
| | Sept. | 4.25 | 4.25 |
| | Oct. | 4.25 | |

During that same period of time, the affidavits and depositions show that for each pay period Pet Milk Company paid exactly the same amount for Grade "C" raw milk as did defendant; that, with the exception of three pay periods, Kraft Foods Company paid the same amount; that Standard Milk Company paid exactly the same amount; that Twin Lakes Dairy paid the same as defendant on fourteen pay periods, slightly less than defendant on nine pay periods, and slightly more than defendant on five pay periods; that Seven Valleys Cheese Company ordinarily paid slightly less than defendant, but on nine pay periods Seven Valleys paid more than defendant; that Milnot Company, on all pay periods except one, paid more than defendant, and in one pay period (first half of December, 1951) Milnot Company paid forty-five cents more per hundred pounds than did defendant; Producers Creamery, as a whole, generally paid less than defendant, although on 19 pay periods Producers Creamery at Cabool, Missouri, paid the same amount as did defendant.

The Court has carefully examined each of the affidavits and depositions to ascertain whether the statements of fact contained therein were made from the personal knowledge of the affiants and deponents. The said affidavits and depositions disclose that the material statements of fact contained therein were not only within the personal knowledge of the affiants and deponents, but said statements, insofar as the price paid by the various companies is concerned, were also of facts which were matters of business record and easily available to the plaintiff if it desired to controvert the same. A further factor demonstrating the incontrovertible nature of the statements as to prices paid is the fact that the affidavits and depositions, for the most part, were executed by officers, employees, or owners of companies directly competing with the defendant. These affidavits and depositions establish beyond question that the prices paid by defendant were competitive prices, substantially the same from pay period to pay period as those of competing companies, and were fixed by keen competition and the economic law of supply and demand.

Plaintiff, on its brief, states:

"The defendant has filed numerous affidavits in support of its motion for summary judgment and invites this Court to draw a conclusion from these affidavits that there is no substantial controversy. * * *

"Nowhere in the motion for summary judgment are the allegations of Paragraphs Six and Eight negatived. For purposes of the motion these allegations must be deemed to be true.

"The matters raised in the defendant's numerous affidavits with respect to the motion for summary judgment are properly matters to be raised by answer, and in its defense of the case in a trial. The defendant has asked this Court to substitute its theories of

the origins of the fictitious prices of grade C raw milk for the allegations charged in the complaint. The defendant has the burden of demonstrating clearly the absence of any genuine issue and any doubt of the existence of such an issue must be resolved against the defendant as the moving party. * * * This the defendant has failed to do."

In the last analysis, the question before the Court is whether the plaintiff may make a general allegation in its complaint that defendant paid a "fictitious price," and, when faced with a motion for summary judgment, supported by affidavits and depositions, may stand on the general allegation in its complaint and make no effort to rebut the defendant's affidavits and depositions or to demonstrate to the Court that plaintiff can produce evidence to support its allegation. Stated differently, once a defendant has made a prima facie showing that no genuine issue of material fact exists, is the plaintiff required to make some showing that a genuine issue of fact does exist?

 The Court feels that the following quotations provide the answer to this question:

"The complaint's allegations with reference to the operations of RSM are meager and little more than conclusions, and in this respect it must be noted that no affidavits have been submitted by plaintiff who appears content to rely upon the complaint and the allegations of fact contained in the affidavits in support of the motion. Insofar as determining whether there exists any genuine issue of material fact, where plaintiff fails to introduce any facts dispelling the conclusion required by the facts adduced in support of the motion, the rule to be followed is that which is succinctly stated in 3 Barron & Holtzoff, Federal Practice and Procedure, page 88:

" 'The rationale of these cases seems to be that the moving party has the burden of showing that there is no genuine issue as to a material fact and

that he is entitled to judgment as a matter of law, but that when he has made a prima facie showing to this effect the opposing party cannot defeat a motion for summary judgment and require a trial by the bare contention that an issue of fact exists. He must show that evidence is available which would justify a trial of the issue.' " Felt, for Use of United States v. Ronson Art Metal Works, Inc., D.C. Minn., 107 F.Supp. 84, 85.

"In 3 Moore's Federal Practice (1938), 3174–5, it is said: ' "* * * The very object of a motion for summary judgment is to separate what is formal or pretended in denial or averment from what is genuine and substantial, so that only the latter may subject a suitor to the burden of a trial." To attain this end, the rule permits a party to pierce the allegations of fact in the pleadings and to obtain relief by summary judgment where facts set forth in detail in affidavits, depositions, and admissions on file show that there are no genuine issues of fact to be tried.' * * *

"As to plaintiff's second point. The affidavits and exhibits herein reveal that no genuine and substantial dispute can possibly exist as to the facts, a consideration and determination of which are dispositive of the issues herein. Plaintiff makes no attempt to show otherwise. * * *

"Plaintiff's failure to controvert the subject-matter of the affidavits and exhibits filed herein in support of the motions for summary judgment 'requires rejection of (his) contention there (may be) a substantial question of fact' in dispute." Hisel v. Chrysler Corp., D.C.Mo., 94 F.Supp. 996, 1003.

"Mere formal denials or general allegations which do not show facts in detail cannot defeat summary judgment." McClellan v. Montana-Dakota Utilities Co., D.C.Minn., 104 F.Supp. 46, 56.

"As raising a material issue of fact on the motion for summary judgment,

appellant relies upon the general denial contained in his answer, and on two affidavits, one of his counsel and one of his own. * * * Neither affidavit contains admissible evidence upon the supposed issue of fact. * * * The mere inclusion in appellant's answer of a general denial of allegations in the complaint, unsupported by any statement of facts admissible in evidence, adds nothing to the force of appellant's affidavits." Chapman v. United States, 8 Cir., 139 F.2d 327, 331.

"The sufficiency of the complaint does not control and, although the burden is on the moving party to demonstrate clearly that there is no genuine issue of fact, the opposing party must sufficiently disclose what the evidence will be to show that there is a genuine issue of fact to be tried." Surkin v. Charteris, 5 Cir., 197 F.2d 77, 79.

"But where the moving party presents affidavits, and depositions, if any, which taken alone would entitle him to a directed verdict, if believed, and which the opposite party does not discredit as dishonest, it rests upon that party at least to specify some opposing evidence that he can adduce which may reasonably change the result." Zampos v. United States Smelting, Refining & Mining Co., 10 Cir., 206 F.2d 171.

See also, Gifford v. Travelers Protective Ass'n of America, 9 Cir., 153 F.2d 209, 211; Wilkinson v. Powell, 5 Cir., 149 F.2d 335, 337; Fremon v. W. A. Sheaffer Pen Co., D.C.Iowa, 111 F.Supp. 39, 52; Garcia v. United States, 108 F.Supp. 608, 613, 123 Ct.Cl. 722; Vol. 10, Cyclopedia of Federal Procedure, Third Edition, Section 35.22, Page 192.

An application of the above rules of law to the facts as disclosed by the record before the Court leads to the conclusion that the defendant is entitled to a summary judgment in its favor.

Plaintiff in its complaint merely alleged generally that defendant paid a price for raw milk which was in excess of the price usually paid in the area in the normal course of business. Yet, the defendant, by undisputed affidavits and depositions, has shown conclusively that defendant's payments for raw milk were substantially the same as its competitors in the area. Plaintiff has not controverted the truth of the facts stated in the affidavits and depositions, nor has the plaintiff intimated to the Court that it might be able to produce any evidence to substantiate its allegation. In view of the facts set forth in the affidavits and depositions, if any "fictitious price" existed, the said fictitious price was being paid by practically all of the milk buyers in the area. However, plaintiff did not allege and does not contend that defendant conspired with the other milk buyers and that all of them were paying a fictitious price. Plaintiff's allegation was that the defendant "by and through its officers, managers and agents" conceived a plan for obtaining a monopoly or corner by establishing and maintaining a fictitious price, and that "the said 'fictitious price' consists of payments for raw milk to producers in the said shed which (a) were in excess of the usual and normal prices paid in the said milk shed in the normal course of business." As heretofore stated, the affidavits and depositions demonstrate conclusively that prices paid by defendant were substantially the same as those paid by their competitors in the area, and that they were not "in excess of the usual and normal prices paid in the said milk shed in the normal course of business."

Since the plaintiff has alleged no actionable conspiracy between defendant and other competitors of the defendant and the plaintiff, the motion to dismiss that part of the complaint upon which plaintiff relies as alleging an actionable conspiracy should be sustained.

Likewise, since there is no genuine issue of fact in reference to the other allegations in the complaint, and the record before the Court shows conclusively that defendant did not, by the payment of fictitious prices, monopolize or attempt to monopolize any part of the trade or commerce among the several states, the motion for summary judgment on that part of the complaint should be sustained.

A judgment in accordance with the above should be entered today.