**LARCON COMPANY**

v.

**Robert C. WALLINGSFORD, Pan-Am Southern Corp.**

**Civ. A. No. 670.**

United States District Court
W. D. Arkansas, El Dorado Division.

Dec. 13, 1955.

Keith & Clegg, Magnolia, Ark., for plaintiff.

Walter L. Brown, Robert C. Compton, El Dorado, Ark., for defendant.

Mahony & Yocum, El Dorado, Ark., for garnishee.

JOHN E. MILLER, District Judge.

The plaintiff, Larcon Company, is a corporation organized under the laws of the State of Delaware and authorized to do business in the State of Arkansas. The defendant, Wallingsford, is a citizen of Arkansas and a resident of the City of El Dorado in said State. The amount in controversy exceeds the sum of $3,-000, exclusive of interest and costs.

The plaintiff seeks judgment against the defendant Wallingsford for the sum of $36,165.48, with interest at 4 percent per annum from May 1, 1954, until paid, the said sum being the deficiency adjudged to be due on the notes herein sued upon after application of the value of the security.

In his answer to the complaint, the defendant admits that the notes were executed on August 10, 1950, by Roberts Petroleum, Inc., and himself, and delivered to the payee, Anatel Corporation, but alleges that the notes were paid by the execution and delivery of two other notes dates December 8, 1950, and that it was the purpose and intention of the parties that the notes sued on herein would be destroyed or surrendered to Roberts Petroleum, Inc.

It is also alleged in the answer:

"The defendant would further state that at the time of the execution and delivery of the notes on December 8, 1950, to Walter Bollenbacher and Louis L. Kelton, there was also an assignment made to them of certain oil, gas, and mineral interests which was accepted as full and complete payment of the notes of December 8, 1950, or with the full understanding that production from the assignments of the mineral interests was to be used in the retirement of the two said notes and in no wise would this defendant, Robert C. Wallingsford, be held personally responsible for the payment thereof.

"Defendant states further that the notes sued on herein should have been destroyed or returned to the defendant or Roberts Petroleum, Inc., upon the execution of the two notes of December 8, 1950, or the assignment of the oil interests."

The plaintiff filed a reply to the answer on August 29, 1955, in which it denied the allegations of the answer and stated:

"Plaintiff states that the Defendant, Robert C. Wallingsford, was a party to that certain proceeding in bankruptcy styled 'In the Matter of Roberts Petroleum Inc., Bankrupt', being Civil No. 535 of this Court; that Walter Bollenbacher and Louis L. Kelton were parties thereto and that as alleged in the Complaint, the notes sued on herein were allowed in said proceeding as valid claims against the bankrupt, of which the Defendant was at all times the Vice President and principal executive officer; that the payment of said notes was an issue in said proceeding to which the Defendant was a participating party represented by counsel and a principal witness; that by reason of said proceeding and the Order of the Referee in Bankruptcy of this Court, dated January 26, 1954, the question of payment is res judicata and plaintiff specifically pleads res judicata as a bar to the defense alleged.

"That the Defendant is now estopped to raise the issue of payment of said notes and plaintiff specifically pleads estoppel as a bar to the defense of payment."

On September 29 the plaintiff served and filed its motion for summary judgment and judgment on the pleadings. On November 23, the defendant, Robert C. Wallingsford, filed his response to the motion in which he alleged that he has a good and meritorious defense to the claim of plaintiff and should be allowed to defend the action on its merits.

The facts are not in dispute, and the question before the Court is whether the plaintiff is entitled to a judgment as a matter of law. The burden is on the

moving party to show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. See, Marion County Cooperative Association v. Carnation Co., D.C.W.D.Ark., 114 F.Supp. 58, and cases therein cited.

The attorneys for the respective parties have filed excellent briefs in support of their contentions, and the briefs have been considered along with the pleadings, the motion, response thereto, all exhibits, and the deposition of defendant, from all of which it appears that:

Roberts Petroleum, Inc., was incorporated under the laws of Arkansas in October 1948. Robert L. Schutter was president. The defendant at all times since the incorporation was vice president and general manager and principal executive officer. Edith Wallingsford, the wife of defendant, was at all times secretary of the corporation. The defendant and his wife owned 50 percent of the stock of the corporation, and defendant was in active charge of its affairs. Apparently the only other stockholder was Elizabeth Schutter, wife of Robert L. Schutter.

On August 10, 1950, the corporation and the defendant, Robert C. Wallingsford, executed and delivered two promissory notes, payable to the order of Anatel Corporation (a California corporation), each for the sum of $20,000. The notes are identical, and are as follows:

"$20,000.00

El Dorado, Arkansas,
"August 10, 1950.

"Ninety days after date for value received, I, we, or either of us promise to pay to the order of Anatel Corporation (A California Corporation) Twenty Thousand and —no/100— Dollars with interest at 4% per cent. per annum from date until paid. The makers and endorsers of this note hereby severally waive presentment for payment, demand, notice of non-payment, protest and consent that the time of payment may be extended without notice thereof.

"Payable at 945 No. La Cienega Blvd., Los Angeles, California.

"Due ——— Address ———
"No. ——— Address ———
"Address ———"

Roberts Pet. Inc.
"by /s/ Robt. C. Wallingsford, V. P.
/s/ Robt. C. Wallingsford

The payee of the notes was dissolved and one of the notes was assigned by the payee to Walter Bollenbacher. The other was assigned to Louis L. Kelton, he and Bollenbacher being the only stockholders of the payee corporation.

On December 8, 1950, Roberts Petroleum, Inc., assigned to the said Bollenbacher and Kelton an undivided one-fourth interest in and to a certain oil and gas lease from J. R. Winn et al., lessors, to Robert C. Wallingsford, lessee, said assignment being placed of record on the same day in Record Book 583 at page 95, of the Miscellaneous Mineral records of Union County, Arkansas.

On the same day, the defendant, Robert C. Wallingsford, and wife, Edith Wallingsford, assigned to the said Bollenbacher and Kelton 7/32nds of all of the oil, produced, saved, and marketed from a 50-acre tract of land in Section 14, Township 18 South, Range 13 West, in Union County, Arkansas, subject to certain other assignments previously made. This assignment was likewise recorded on the date of its execution, and appears of record in Book 583 at page 97 of the Miscellaneous Mineral records of Union County, Arkansas.

On May 16, 1952, the corporation filed a debtor's petition for arrangement under Chapter 11 of the Bankruptcy Act as amended, 11 U.S.C.A. § 701 et seq. On July 31, 1952, the corporation was adjudicated a bankrupt.

On October 16, 1952, the said Bollenbacher and Kelton filed proof of their in-

dividual claims as secured claims for the balance due on the notes in the sum of $19,751.47 each.

On October 27, 1952, the defendant, Robert C. Wallingsford, filed a claim as an unsecured creditor of the bankrupt corporation in the amount of $79,515.59.

In December 1952 the Harris Trust and Savings Bank and Franklin O. Mann, as trustee, filed their petition for an order marshalling liens and interest in certain property in the custody of the court and for other relief. In paragraph 19 of the petition it was alleged that the said Bollenbacher and Kelton, along with other persons, may have or claim to have some right, title, interest, or lien in and to certain leasehold estates, but that such rights, if any, were subject and inferior to the right, title, interest, or lien of the petitioners.

In subparagraph (E) of paragraph 20 it was alleged that the claims of Bollenbacher and Kelton upon the promissory notes for the total sum of $39,502.94 represented funds paid by Anatel Corporation to the bankrupt under and pursuant to a contract dated August 28, 1950, between Robert C. Wallingsford and Roberts Petroleum, Inc., as seller, and the said Bollenbacher and Kelton as buyers for the purpose of paying or reimbursing the bankrupt for the cost of drilling certain oil wells, and for the purpose of paying the consideration for an assignment to the said Bollenbacher and Kelton of an interest in said leasehold estate rather than a loan made by the Anatel Corporation to the bankrupt.

In paragraph 26 of the petition the last known mailing address of the persons who have, or may claim to have, some right, title, interest or lien in and to the leasehold estates, the personal property located thereon, and the rents, issues, and profits were set forth. Among the persons named and whose addresses were given were Bollenbacher and Kelton and the defendant, Robert C. Wallingsford.

The prayer of the petition as set forth in paragraph (A) thereof was that the court adjudicate and determine the right, title, interest, or lien of the petitioners and each of the persons, firms, and corporations named in paragraph 26 in and to the leasehold estate, the personal property located thereon, and the rents, issues, and profits thereof, and the relative priority of the right, title, interest, or lien of each of them over the others. In paragraph (J) the petitioners prayed, "that an order be entered herein directing each of the persons, firms, and corporations named in paragraph 26 hereof to show within a short day to be fixed by the court what right, title, interest, or lien they, or any one or more of them, have in and to the leasehold estates, the personal property located thereon, and the rents, issues, and profits thereof described in paragraph 17 hereof, or be forever thereafter barred from asserting any right, title, interest, or lien therein".

In paragraph (K), "that this court order and direct the manner and the time within which each of the persons, firms, and corporations named in paragraph 26 hereof shall be notified of the relief sought in and by this petition".

On December 30, 1952, the petition was presented to the Referee and he entered an order directing all claimants in and to the property in the custody of the court to show on or before January 15, 1953, what, if any, interest they may have in such property or be forever foreclosed thereafter from asserting any interest therein, and providing for other relief. The order specifically provided that Bollenbacher and Kelton and the defendant, Robert C. Wallingsford, should file any and all claims that they might have on or before said date of January 15, 1953.

On January 13, 1953, Bollenbacher and Kelton filed their answer to the petition and prayed that they be recognized as the owners of an undivided ¼th interest in the leasehold estate hereinbefore referred to, and that such interest be held to be paramount and superior of any claim or right, title, interest or lien of the petitioner or of any other person.

The trustee, Donald E. Bradham, made and filed objections to the claims of Bollenbacher and Kelton, and asked that the claim of each be disallowed. Among other objections *the trustee alleged that the said claims, if any, had been fully paid and satisfied and that there was no consideration for said claims;* that the claims should be disallowed and the assignments to secure the payment of said claims should be annulled and set aside.

Notice to all of the persons named was given of a hearing on the petition, and answers or responses thereto, to be held beginning March 16, 1953. An extended hearing was had, and the Referee took the matter under advisement. While the proceedings were held under advisement by the trustee, Bollenbacher and Kelton, on December 4, 1953, for a valuable consideration assigned the promissory notes and interest in the oil and gas lease held as security for the payment of same to the plaintiff, Larcon Company. The assignment transferred to plaintiff all the right, title, and interest of said Bollenbacher and Kelton to each of the notes sued on herein; the proofs of claim and the security therefor; the oil and gas lease that had been assigned to them as security for the payment of the note; and all claims and demands that they might have against the estate of the bankrupt.

On January 26, 1954, the Referee entered an order declaring the rights and equities of each and every claimant. In paragraph 1 of the Findings of Fact it is recited that Bollenbacher and Kelton appeared by their attorneys, Messrs. Crumpler and O'Connor, and that the defendant, Robert C. Wallingsford, appeared by his attorney, C. E. Wright.

Paragraphs 20 and 21 of the findings are as follows:

"20. That on or about August 10, 1950, Anatel Corporation loaned the bankrupt $40,000; that the bankrupt in order to evidence its indebtedness for said sum of $40,000 so loaned to it duly executed and delivered to Anatel Corporation its two promissory notes, each dated August 10, 1950, each payable to the order of Anatel Corporation, 90 days after the date thereof in the principal sum of $20,000, and with interest after date at the rate of 4 percent per annum; that shortly after August 10, 1950, Anatel Corporation duly endorsed one of said notes to the order of Bollenbacher and delivered the same to him, and duly endorsed the other of said notes to the order of Kelton and delivered the same to him; that Bollenbacher at all times since shortly after August 10, 1950, has been the owner and holder of the said promissory note which was so endorsed to him; that Kelton at all times since shortly after August 10, 1950, has been the owner and holder of said promissory note which was so endorsed to him; that there is presently due on each of said promissory notes the principal sum of $19,751.47; and that the total principal amount presently due on said promissory notes is the sum of $39,502.94.

"21. That on December 8, 1950, the bankrupt executed and delivered to Bollenbacher and Kelton an assignment dated as of that date, and recorded in Book 583 at page 95 of the Miscellaneous Mineral Records of Union County, Arkansas, wherein and whereby the bankrupt sold, transferred, assigned, and conveyed to Bollenbacher and Kelton, share and share alike, the undivided ¼ interest in and to the said leasehold estate, which ¼ interest had theretofore been assigned to the bankrupt by Pontiac * * * that said assignment was made as security for the payment of said two promissory notes dated August 10, 1950, and Bollenbacher and Kelton as the owners and holders of said promissory notes are entitled to the benefit of such security; that the lien of Bollenbacher and Kelton on said ¼ interest in and to said leasehold estate to secure said two promissory notes

is prior and superior to the right, title, or lien of any other party in and to the same, subject to the foregoing limitations of said assignment; that by virtue of such limitations Bollenbacher and Kelton are not entitled to 7⁄32nds of the proceeds of oil runs from said leasehold estate unless and until Pontiac has assigned and conveyed to the bankrupt an additional 3⁄8ths interest in and to said leasehold estate as set forth in such limitations and this has not yet been done by Pontiac; that Bollenbacher and Kelton in and by their respective answers herein have disclaimed any interest under and by virtue of said assignment insofar as the same covers the premises in Union County, Arkansas, described as follows, to-wit:

\*  \*  \*  \*  \*

that an order should be entered herein ordering and directing Bollenbacher and Kelton to execute and deliver to the Trustee of the bankrupt a good and sufficient release of their said lien in and to the premises last hereinabove described and adjudicating that Bollenbacher and Kelton have a first and prior lien on an undivided 1⁄4 interest in and to said leasehold estate (effective upon the conveyance thereof to the trustee of the bankrupt) to secure the payment of said sum of $39,502.94."

In paragraph (U) of the conclusions and judgment it was adjudicated:

"That the objections filed by Bradham as trustee to the proof of secured claim of Bollenbacher and Kelton in the total principal sum of $39,502.94, be, and the same are, hereby overruled and said claim is hereby allowed as a secured claim in the aforesaid sum, and Bollenbacher and Kelton have a lien as provided in paragraph 21 of the findings hereof and subject to the provisions of paragraph C hereof upon the bankrupt's interest in and to an undivided 1⁄4th interest in the leasehold estate created in and by the lease de-

scribed in paragraph 12 of said findings to secure the payment of said sum of $39,502.94, which said lien is inferior to the lien of Superior Lumber as set out in paragraph I herein, but prior and superior to the right, title, interest, or lien of any other parties hereto in and to said undivided 1⁄4th interest in said leasehold estate."

Thus, the court held that it had jurisdiction of the subject matter of the proof of the claims and all objections filed thereto; that it had jurisdiction of all interested parties, including the defendant Wallingsford, who was represented by counsel, and who appeared and was heard in the proceeding; that the issue of the payment of the notes sued on herein was raised by the pleadings upon the claims and objections thereto, and the court found that the notes were due and owing and unpaid in the principal sum of $39,502.94.

After the motion for summary judgment was filed, the deposition of the defendant, Robert C. Wallingsford, was taken on September 15, 1955, at El Dorado, in which he testified that he was a witness at the hearing before the Referee in Bankruptcy that began on March 16, 1953, but he did not remember hearing Mr. Kelton testify about the notes sued upon.

It appears that the attorneys for Wallingsford had been requested to produce at the time of the taking of the deposition any letters or written memoranda that he might have had with Bollenbacher and Kelton. Accordingly, the defendant was interrogated concerning several communications, but he produced only one letter. It was stipulated by the attorneys for the respective parties at the time that the defendant Wallingsford had made a search of his records, and he was unable to find any of the letters he was questioned about in the deposition other than a letter dated December 8, 1950, written by him to Bollenbacher and Kelton. The letter, omitting the addresses, is as follows:

"Dear Sirs:

"This will acknowledge receipt of $40,000.00 ($20,000.00 from each of you) for which we have executed and enclose the six months notes of $20,000.00 each, one payable to Walter Bollenbacher and the other payable to Louis L. Kelton.

"We have today assigned to you and undivided ¼ of ⅞ (7⁄32nd) of all oil from NW¼ of NW¼ and NW¼ of NE¼ of NW¼ of Sec. 14, Twp. 18 S, Rge, 13 W, and have assigned to you an undivided ¼ interest in the oil and gas lease covering SW¼ of NW¼ and NW¼ of SW¼ of Sec. 11, Twp. 18 S, Rge 13 W, Union County, Arkansas, and enclose certified copies of the instruments which were recorded today. These assignments are made to and accepted by you as security for the payment of the two $20,000.00 notes of today's date mentioned above and also as security for the payment of our other promissory notes now held by you as follows:

"Held by Walter Bollenbacher

| "Note dated | Amount |
| --- | --- |
| Aug. 10, 1950 | $20,000.00 |
| Sept. 28, 1950 | 10,000.00 |
| Oct. 9, 1950 | 33,750.00 |
| Oct. 27, 1950 | 20,000.00 |
| Oct. 2, 1950 | 10,000.00 |
| Oct. 2, 1950 | 8,000.00 |
| | $101,750.00 |

"Held by Louis L. Kelton

| "Note dated | Amount |
| --- | --- |
| Aug. 10, 1950 | $20,000.00 |
| Sept. 28, 1950 | 10,000.00 |
| Oct. 9, 1950 | 33,750.00 |
| Nov. 13, 1950 | 20,000.00 |
| Oct. 2, 1950 | 10,000.00 |
| Oct. 2, 1950 | 8,000.00 |
| | $101,750.00 |

"Upon the payment in full of said notes, you are to reassign said interest in oil and said interest in the lease to us respectively.

"The Assignment of Interest in Oil and Gas Lease from Roberts Petroleum, Inc. to Walter Bollenbacher and Louis L. Kelton dated December 8, 1950 covering the SW¼ of NW¼ and NW¼ of SW¼ of Sec. 11 Township 18 South Range 13 West, Union County, State of Arkansas 'and Roberts Petroleum, Inc. receives said assignment'. It is hereby agreed that this provision was and is intended to read 'and Roberts Petroleum, Inc. is entitled to receive said assignment'. That assignment is hereby corrected accordingly.

"If this is your understanding, will you please sign the enclosed copy of this letter and return to us?

   "Yours truly,

   "Roberts Petroleum, Inc.,

   "By ————————

    "Vice President

   "By ————————"

The allegation in the answer to the effect that it was understood on December 8, 1950, that the defendant would not be held personally responsible for the payment of certain notes that were executed on December 8, 1950, as outlined in the above letter, has not been insisted upon by him in his opposition to the motion for summary judgment. Evidently, the two notes referred to in the letter of December 8, hereinbefore set forth, are in addition to the two notes sued upon. There is nothing in the letter to indicate whether the notes that were executed on that date were personally signed by the defendant, or whether they were the notes of the corporation, but the notes sued upon herein were signed both by the corporation, Roberts Petroleum, Inc., and the defendant.

Sec. 27–810, Ark. Stats., provides that joint obligations shall be construed to have the same effect as joint and several obligations, and may be sued on and recovery had thereon in like manner.

Sec. 27–811, supra, provides that persons severally liable upon a promissory note may all, or any of them, be included in the same action at the plaintiff's option. See, Lamew v. Wilson-Ward Co.,

106 Ark. 340, 153 S.W. 261; Haley v. Brewer, 220 Ark. 511, 248 S.W.2d 890.

In Bank of Corning v. Nimnich, 122 Ark. 316, 183 S.W. 756, the second headnote of 122 Ark. is as follows:

"A promissory note was signed by a corporation and the signature was attested by the secretary of the corporation, thereafter appeared the names of certain persons, after whose names appeared the word 'Director.' Held, the persons so signing would be held to have signed in their individual capacity, and not as officials of the corporation."

■ The defendant cannot show by parol evidence that he was not to be bound by the notes sued upon. See, First National Bank of Jonesboro v. J. H. Snyder Mfg. Co., 175 Ark. 1134, 1 S. W.2d 817.

In Randle v. Overland Texarkana Company, 182 Ark. 877, at page 880, 32 S. W.2d 1064, at page 1066, 75 A.L.R. 1516, the court quoted from the First National Bank of Jonesboro v. J. H. Snyder Mfg. Co., supra, as follows:

" 'This court has often decided that parol evidence cannot be admitted to vary the terms of a written contract or to show a contrary intention than that disclosed by the instrument unless there is an ambiguity. This rule has been applied in the case of promissory notes. Lawrence County Bank v. Arndt, 69 Ark. 406, 65 S.W. 1052. In that case, the only evidence on the face of the promissory note that the persons signing it did not intend to bind themselves personally was the affixing to their signatures of some designation of agency as by signing themselves, respectively, as president, vice president, secretary, and treasurer without stating for whom or for what company they were acting. Under these circumstances, they were liable personally and could not as a defense show by parol evidence that they intended to bind a

certain corporation for which they were acting.' "

Thus the notes sued upon were an obligation of the bankrupt corporation and also an obligation of the defendant Wallingsford individually.

The defendant admits he signed the notes as an individual, but contends in his original brief that he is entitled to his individual defenses to the notes; that these defenses have never been heard because this is the first action of any kind against him as an individual for his liability, if any, as a co-maker of the notes sued on herein; that he was "just another creditor of the bankrupt", the same as many other individuals and corporations were creditors; that he had nothing whatsoever to do with the bankruptcy proceedings which involved the notes sued on herein, and his contentions as an individual co-maker of these notes were not heard and could not have been heard in those proceedings.

In his supplemental brief the defendant contends that the judgment secured on the notes in the Bankruptcy Court against the bankrupt, Roberts Petroleum, Inc., is not conclusive as against him and does not bar his alleged defense of payment; that the Bankruptcy Court had no jurisdiction to render a judgment against him.

The plaintiff contends that the question of the court's jurisdiction to render a judgment against the defendant is immaterial to the question of whether an adjudication by a court of competent jurisdiction of the issue of payment is binding on all parties to the proceeding, and that since the defendant had notice of the claims, the right and duty to present defenses and objections thereto, and actually participated in the proceedings as shown by the court's judgment, that the defendant is barred now from presenting any and all defenses that were presented in the Bankruptcy Court, or which he could or should have presented, and as to all issues determined or which should have been determined by the Bankruptcy Court.

The defendant and his wife owned 50 percent of the capital stock of the bankrupt. He was the principal executive officer and in charge of its business.

Sec. 7 of the Bankruptcy Act, as amended July 7, 1952, 11 U.S.C.A. § 25, provides:

"(a) The bankrupt shall * * * (3) examine and report to his trustee concerning the correctness of all proofs of claim filed against his estate; * * * (7) in case of any person having to his knowledge proved a false claim against his estate, disclose that fact immediately to his trustee * * *.

"(b) Where the bankrupt is a corporation, its officers, the members of its board of directors or trustees or of other similar controlling bodies, its stockholders or members, or such of them as may be designated by the court, shall perform the duties imposed upon the bankrupt by this title."

■ In 1 Collier on Bankruptcy, 14th Edition, Sec. 7.05, pages 972–973, it is stated that clauses (3) and (7) above set forth should be considered together. In discussing the changes regarding the duties of a bankrupt effected by the Act of 1938, the author states that the words "and report to his trustee concerning" were added to clause (3); and "(b) the former qualification in the proviso to Sec. 7 that the bankrupt need not examine claims 'except when presented to him, unless ordered by the court, or a judge thereof, for cause shown' has been deleted. The first change mentioned merely carries out the former objective of clause (3); but the latter change makes absolute the bankrupt's duty to examine claims". These clauses rarely have been construed, but the duty of the bankrupt to inform the trustee of all false claims coming to his knowledge persists until he is discharged or until the final closing of administration, if discharge is granted sooner. "The bankrupt also has sufficient standing to move to expunge a false claim, although where there is a

trustee, the latter, as the representative of all the creditors, should do this."

In Sec. 7.25, page 1014, of the same volume, the learned author says:

"Subdivision b of Sec. 7 was added by the Act of 1938 to clarify the question as to who must perform the duties prescribed by Sec. 7 where the bankrupt is a corporation. The subdivision provides that in such situations, the bankrupt's 'officers, the members of its board of directors or trustees or of other similar controlling bodies, its stockholders or members, or such of them as may be designated by the court, shall perform the duties imposed upon the bankrupt by this Act' ".

In Goldie v. Cox, 8 Cir., 130 F.2d 690, the court at page 695 said:

"The Bankruptcy Act recognizes the necessity of assistance from the bankrupt to the trustee and creditors * * *. Where the bankrupt is a corporation, this same situation applies to officers and directors thereof." Citing Crutcher v. Logan, 5 Cir., 102 F.2d 612, 613.

In the Crutcher case, supra, the court at page 613 of 102 F.2d said:

"The successful administration of a bankruptcy estate, of necessity, requires cooperation and assistance from the bankrupt, and where, as here, the bankrupt is a corporation the assistance must come from the officers and persons employed by the corporation prior to its bankruptcy. The officers should disclose all information which they have concerning the bankrupt's affairs."

Sec. 47 of the Act, 11 U.S.C.A. § 75, provides that the trustee shall:

"(8) examine all proofs of claim and object to the allowance of such claims as may be improper".

■ The trustee has not only the right, but the duty to object to any claim not entitled to proof or allowance. "This duty virtute officii may be enforced by the court upon petition of a creditor or

the bankrupt." 3 Collier on Bankruptcy, 14th Edition, page 226.

The trustee fully discharged his duty in reference to the notes now sued upon. The claims of Bollenbacher and Kelton now owned by plaintiff were objected to by a creditor who filed the petition hereinbefore referred to. The Referee promptly ordered a hearing on the petition and directed that all parties in interest should respond thereto. Bollenbacher and Kelton and the defendant Wallingsford were notified of the filing of petition objecting to the allowance of the claims evidenced by the notes. Bollenbacher and Kelton filed an answer ·in which they denied that the notes were not valid obligations and that they had been paid. Apparently the defendant did not file any formal objection to the allowance of the claims, but the trustee did, in which he specifically·pleaded that the claims, based upon the notes, had been fully paid and satisfied and that there was no consideration for the claims.

▇▇▇ Sec. 70, sub. c of the Act, 11 U.S.C.A. § 110, provides that·the trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitations, statutes of fraud, usury, and other·personal defenses. After a full and complete hearing the objections of the trustee and other creditors were overruled, and the claims were allowed by the Referee. At this hearing the defendant Wallingsford was present and was represented by counsel. He participated in the hearing, but, notwithstanding the resistance on the part of the trustee, with the aid of the defendant, the notes were found to be due and payable, and the Referee found that on the date of the hearing that there was due on each of the promissory notes the principal sum of $19,751.47.

Sec. 57, sub. d of the Act, 11 U.S.C.A. § 93, sub. d, provides:

"Claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court,

unless objection to their·allowance shall be made by parties in interest or unless their consideration be continued for cause by·the court upon its own motion."

In 3 Collier on Bankruptcy, 14th Edition, at page 220, it is said:

"The term 'parties in interest' applies to those who have an interest in the res which is.to be administered. Undoubtedly under this definition the bankrupt's creditors are the parties primarily interested. In fact, the right of a creditor to object to the allowance of another alleged creditor's claim is on principle undisputed."

The court in Rosenbaum v. Dutton, 8 Cir., 203 F. 838, had under consideration Sec. 57 sub. d of the Bankruptcy Act, and at page 841 of the opinion said:

. "We are of the opinion that by 'parties in interest' in this section of the Bankruptcy Act are included all persons who have an interest in the res which is to be administered."

. In the case of In re Bankers Trust Co. of Detroit, D.C.E.D.Mich., 15 F.Supp. 21, the court at page 27, in discussing the words " 'parties in interest' " in the statute held that it was·too well settled to require the citation of authorities that creditors of a bankrupt are such " 'parties in interest' ".

. It should·be borne in mind that the defendant Wallingsford was not only the principal executive officer of the bankrupt corporation, he was also a creditor and had filed a claim for approximately $80,000 against the bankrupt when he, along with other creditors, was ordered by the trustee to' respond to the petition of another creditor that attacked the validity of the claim of Bollenbacher and Kelton.

In 3 Collier on Bankruptcy, 14th Edition, at page 191, the rule is stated as follows: ·

" 'The allowance or disallowance of a claim in bankruptcy should be given like effect as any other judgment of a competent court, in a sub-

sequent suit against the bankrupt or any one in privity with him.' Thus the final allowance of a claim is a finding as between all parties in interest that the allowed claim does exist against the bankrupt and that it has not been discharged or waived, which finding cannot be collaterally attacked in another proceeding. The general rule may be stated that in order for the doctrine of res judicata to be applied, it must be shown that either the matter controverted in the second action was raised and litigated in the proceedings for allowance, or that the matter, if not raised, was one which could and should have been brought forward and litigated. In this respect, the referee's orders, if not reviewed within the time and manner provided by the Act, have the same force and effect as orders of the district judge."

In 6 Am.Jur., Bankruptcy, Sec. 512, page 848, it is stated:

"The action of a referee in allowing or disallowing a claim is, in effect, a judgment which is final, unless modified, set aside, or reversed upon reconsideration or appeal. Every person submitting himself to the jurisdiction of the bankruptcy court in the progress of the cause for the purpose of having his rights in the estate determined makes himself a party to the suit, and is bound by what is judicially determined in the legitimate course of the proceeding, subject to a reconsideration of the matter by the same court. The effect of the allowance or rejection of a claim in a bankruptcy proceeding as res judicata in an independent action or proceeding between the claimant and another creditor is governed by the ordinary rules applicable to the subject of res judicata generally."

In United States v. Coast Wineries, 9 Cir., 131 F.2d 643, the court at page 648 said:

"Subject to the right to obtain a re-examination on review, an order disallowing a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata. 8 C.J.S., Bankruptcy, § 444, p. 1314; In re Anderson, 2 Cir., 279 F. 525; United States v. American Surety Co., 2 Cir., 56 F.2d 734; In re Universal Rubber Products Co., D.C., 25 F.2d 168. The judgments, decrees, and orders of the bankruptcy court in bankruptcy matters possess all the attributes of finality and estoppel accorded to judgments from courts of general original jurisdiction. Remington on Bankruptcy, 4th ed., Vol. 5, § 2312.75, p. 459."

In Blanks v. West Point Wholesale Grocery Co., 225 Ala. 74, 142 So. 49, 21 Am.Bankr.Rep.,N.S., 329, the headnote reads as follows:

"Allowance of a claim upon a promissory note by a referee in bankruptcy is a final and conclusive adjudication of the indebtedness, and the amount thereof, at the time of the allowance, and, if unreversed, is res judicata as to a subsequent suit upon the claim, so that the only available defense to a suit to establish a waiver of exemption is a denial of the waiver or payment since the adjudication."

In Lewith v. Irving Trust Co., 2 Cir., 67 F.2d 855, 24 Am.Bankr.Rep.,N.S., 318, Judge L. Hand, in discussing the effect of an allowance of a claim, beginning at bottom of page 856 of 67 F.2d said:

"But an allowance after objection is another matter; there has been a litigation upon issues, settled by the decision of a court. Such an allowance has all the substantial elements of a judgment, and has the effect of a judgment; it is res judicata between the parties, not only in other suits, but in the bankruptcy proceedings themselves." Citing cases.

In Massee & Felton Lumber Co. v. Benenson, D.C.S.D.N.Y., 23 F.2d 107, 11 Am.Bankr.Rep.,N.S., 301, the court in discussing the question at page 108 of 23 F.2d, said:

"It may well be that, if the bankrupt or a creditor participates in a contest of the claim, the findings of the court basic to the allowance will be findings of fact binding thereafter as between the contesting parties."

The case of Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329, was a suit brought in the Federal Court for the Eastern District of Arkansas to recover on 14 bonds of $1,000 each, which had been issued by the Drainage District. In its answer the Drainage District pleaded a decree of the same District Court in a proceeding instituted by the District to effect a plan of readjustment of its indebtedness. The decree recited that a plan of readjustment had been accepted by the holders of more than two-thirds of the outstanding indebtedness and was fair and equitable; that to consummate the plan and with the approval of the court the District had issued and sold new serial bonds to the Reconstruction Finance Corporation which new bonds were valid obligations; also with the approval of the court, the RFC had purchased outstanding obligations of the District to the amount of $705,087.06, which had been delivered in exchange for new bonds and canceled; that certain proceeds had been turned over to the clerk of the court and the disbursing agent had filed his report showing that the RFC had purchased all the old bonds of the District other than the amount of $57,449.30. The decree provided for the application of the amount paid into the court to the remaining old obligations of petitioner, and that such obligations might be presented within one year, and that unless so presented they should be forever barred from participating in a plan of readjustment or in a fund paid into court. Except for the provision of such presentation, the decree canceled the old bonds and the holders were enjoined from thereafter asserting any claim thereof. The decree was pleaded as res judicata and the bank demurred to the answer.

The bank had notice of the proceeding for debt readjustment.

At page 375 of 308 U.S., at page 319 of 60 S.Ct., the court said:

"As parties, these bondholders had full opportunity to present any objections to the proceeding, not only as to its regularity, or the fairness of the proposed plan of readjustment, or the propriety of the terms of the decree, but also as to the validity of the statute under which the proceeding was brought and the plan put into effect. Apparently no question of validity was raised and the cause proceeded to decree on the assumption by all parties and the court itself that the statute was valid. There was no attempt to review the decree. If the general principles governing the defense of res judicata are applicable, these bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it." Citing cases.

The court then discussed the effect of a later decision which held the particular statute unconstitutional, but notwithstanding the statute under which the decree was entered was later held unconstitutional, the decree was upheld.

In the concluding paragraph at page 378 of 308 U.S., at page 320 of 60 S.Ct., the court said:

"The remaining question is simply whether respondents [bank] having failed to raise the question in the proceeding to which they were parties and in which they could have raised it and had it finally determined, were privileged to remain quiet and raise it in a subsequent suit. Such a view is contrary to the well-settled principle that res judicata may be pleaded as a bar, not only as

respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, 'but also as respects any other available matter which might have been presented to that end' ". Citing Grubb v. Public Utilities Commission, 281 U.S. 470, 479, 50 S.Ct. 374, 74 L.Ed. 972; Cromwell v. County of Sac, 94 U.S. 351, 352, 24 L.Ed. 195.

The Bankruptcy Court was a court of competent jurisdiction to determine whether the notes now sued upon were a valid and outstanding obligation or whether they had been paid. These issues were squarely before the court, and the defendant was a party in interest and participated in the hearing which resulted in the rendition of the judgment by the Bankruptcy Court holding that the notes were valid and unpaid.

In Brooks v. Superior Oil Co., D.C.W. D.Ark., 108 F.Supp. 665, this court in considering the defense of res judicata at page 667 quoted from the case of Ripley v. Kelly, 209 Ark. 389, 391, 190 S.W.2d 526, 527, as follows:

" 'The trial court correctly sustained the plea of res judicata. The general rule is stated in 30 Am.Jur., Sec. 178, pages 920–923 as follows: "It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subsequent action between the same parties or their privies, regardless of the form the issue may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. In such cases, it is also immaterial that the two actions

are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief." Among the numerous cases cited in support of this principle are, Equitable Life Assurance Soc. v. Bagley, 192 Ark. 749, 94 S.W.2d 722; and Phillips v. Colvin, 114 Ark. 14, 169 S.W. 316, L.R.A.1915E, 875.' "

The court in the Ripley case, supra, also quoted from National Surety Co. v. Coates, 83 Ark. 545, 104 S.W. 219, in which the court said:

" 'A right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground for recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and, even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.' " 209 Ark. 389, 190 S.W.2d 527.]

In Timmons v. Brannan, Ark., 280 S. W.2d 393, at page 394 said:

"In Shorten v. Brotherhood of Railroad Trainmen, 182 Ark. 646, 32 S.W.2d 304, 305, a plaintiff attempted to bring a second action on a matter that could have been litigated in the first action between the same parties. In sustaining the plea of res judicata we quoted from the case of Robertson v. Evans, 180 Ark. 420, 21 S.W.2d 610:

" ' "The test in determining the plea of res judicata is not alone whether the matters presented in the subsequent suit were litigated in a former suit between the same parties, but whether such matters were necessarily within the issue and might have been litigated in the former suit." '

"The test is not whether the matters in the second suit were actual-

ly litigated in the former suit between the parties, but whether such matters were necessarily within the issues and might have been litigated in the former suit. The following recent cases declare and follow the rule of res judicata as above quoted: Thomas v. McCullum, 201 Ark. 320, 144 S.W.2d 467; Meyer v. Eichenbaum, 202 Ark. 438, 150 S.W.2d 958; Ripley v. Kelly, 209 Ark. 389, 190 S.W.2d 526; Lillie v. Nunnally, 211 Ark. 202, 199 S.W.2d 751; Crump v. Loggains, 212 Ark. 394, 205 S.W.2d 846; Andrews v. Gross & Janes Tie Co., 214 Ark. 210, 216 S.W.2d 386; Seaboard Finance Co. v. Wright, [223 Ark. 351] 266 S.W.2d 70; Timmons v. Clayton, 222 Ark. 327, 259 S.W.2d 501."

In Phoenix Finance Corporation v. Iowa-Wisconsin Bridge Co., 8 Cir., 115 F.2d 1, 139 A.L.R. 1490, the court in discussing a plea of res judicata, 115 F. 2d at page 6 of the opinion, said:

"In considering this issue it should be observed that it has long been the rule in the national courts 'that a former judgment between the same parties (or their privies) upon the same cause of action as that stated in the second case constitutes an absolute bar to the prosecution of the second action, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" Citing cases.

The defendant seeks to escape the effect of the plea of res judicata by claiming that he was not a party to the proceeding in bankruptcy in which the issues of the validity and the payment of the notes sued on herein was determined.

It is unnecessary to repeat the facts hereinbefore set forth which establish without doubt that the defendant was an actual party by order of the Referee; that he appeared by counsel and participated in the hearing on the question of the validity and status of all the claims against the bankrupt, including the notes here sued on. The defendant was not only a party, but he was a creditor of the bankrupt and the principal executive officer. The law required him to assist the trustee in the defense of any claim, and since he was a creditor he likewise had the right to oppose the allowance of the notes sued on herein.

A former judgment cannot be pleaded as res judicata by strangers to the action in which it was rendered, but may be pleaded by, and only by, the parties to the action and their privies, that is, by those who would have been bound by a judgment holding otherwise.

"Privies" within the meaning of this rule are persons who have mutual or successive relationships to the same right or thing, who claim through or under the parties to the former action. The plaintiff acquired the notes by assignment from Bollenbacher and Kelton after the proceeding in the Bankruptcy Court had been held.

Regardless of whether the defendant was an actual party to the record in the proceeding in the Bankruptcy Court, yet he is bound by the judgment of that court which established the validity of the notes and the fact that they were outstanding and unpaid obligations.

In Phoenix Finance Corporation v. Iowa-Wisconsin Bridge Co., supra, the court in discussing this identical question quoted from many other cases, and held at page 6 of 115 F.2d:

" * * * 'that one who prosecutes or defends a suit in the name of another, to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly, to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it, as an estoppel against an adversary party, as he would be if he had been a party to the record.'" Citing cases.

The court further said:

"And when a party takes an active part in litigation in a federal court and its rights are there determined on the merits, 'that court has power to protect its decree as against any action which such litigant may take in any other court.'"

Generally speaking, the term "parties" as used in connection with the doctrine of res judicata includes all who are directly interested in the subject matter of the suit and have a right and are given an opportunity to make a defense, control the proceedings, examine, and cross-examine witnesses. Persons not having these rights are regarded as strangers. It can hardly be said that the defendant herein was a stranger to the proceeding in the Bankruptcy Court that resulted in the judgment now pleaded as res judicata by the plaintiff.

In Carrigan v. Carrigan, 218 Ark. 398, at page 403, 236 S.W.2d 579, at page 582, the court quoted with approval 30 Am. Jur. 960, as follows:

"'The strict rule that a judgment is operative, under the doctrine of res judicata, only in regard to parties and privies is sometimes expanded to include as parties, or privies, a person who is not technically a party to a judgment, or in privity with him, but who is, nevertheless, connected with it by his interest in the prior litigation and by his right to participate therein, at least where such right is actively exercised by the employment of counsel, control of the defense, filing of an answer, payment of expenses or costs of the action, or doing of such other acts as are generally done by parties.' See also Freeman on 'Judgments' (5th Ed.) Sec. 432, et seq."

The defendant has pleaded that he paid these notes on December 8, 1950, prior to the adjudication of the Roberts Petroleum, Inc., as a bankrupt. The issue of payment was adjudicated by the Bank-ruptcy Court, and that judgment, under the facts in this case, bars the plea of payment in the instant case.

Therefore, plaintiff's motion should be sustained and an order is being entered sustaining the motion and rendering judgment for plaintiff for the amount due on the notes.