L. V. ROWE, Plaintiff,

v.

Dane HARRIS et al., Defendants.

Civ. A. No. 848.

United States District Court
W. D. Arkansas,
Hot Springs Division.

June 29, 1961.

Sam Anderson, Hot Springs, Ark., Sam Montgomery, North Little Rock, Ark., Pope, Pratt & Shamburger, Little Rock, Ark., for plaintiff.

Wootton, Land & Matthews, Hot Springs, Ark., Lookadoo, Gooch & Lookadoo, Arkadelphia, Ark., Q. Byrum Hurst, Curtis L. Ridgway, Jr., Hot Springs, Ark., for defendants.

JOHN E. MILLER, Chief Judge.

The motion of defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C. is now before the court.

On April 7, 1961, the plaintiff, L. V. Rowe, a citizen of the State of Arkansas and a resident of the City of Hot Springs in Garland County, Arkansas, filed his complaint against the defendants, "Dane Harris, Johnny Madison, Harry Leopoulos, Jerry Rosenberg, 'John Doe' Crawford, et al., d/b/a the Vapors," in which he alleged "that Dane Harris and others presently unknown to this plaintiff are interested in the operation of a nightclub and gambling establishment known as the 'Vapors.' That the other named defendants hold commissions from the City of Hot Springs, Arkansas, as Peace Officers, carry badges and guns and are employed in various capacities as cashier, bouncer, dealer, pit boss. That the other named defendants all are agents, servants and employees of defendant Dane Harris and the other parties interested in said business."

He further alleged that the defendant, Dane Harris, and others conducted an illegal gambling establishment and sets out in some detail the various gambling paraphernalia that was present in the establishment; that the plaintiff while in the establishment was forcibly arrested, physically dragged across the front of the establishment against his will and resistance, and with bodily force and violence was imprisoned in the back office of the gambling establishment on the night of April 1, 1961, and the early hours of April 2, 1961; that the defendants committed assault and battery upon the body of the plaintiff; humiliated, embarrassed and intimidated him; threatened further force, violence and harm against him and threatened to deprive him of his property and money.

That the said defendant, Dane Harris, and other defendants acting in concert with him, conspired against him and falsely imprisoned him; that they slandered and accused him of criminal acts and jointly and severally conspired to deprive him of his liberty by falsely arresting him and imprisoning him without cause or reason, all of which acts were in violation of the rights guaranteed to the plaintiff by the Constitution of the United States and the Acts of Congress pursuant thereto.

In numbered Paragraph VII of the complaint it is alleged:

"That the employees of defendant Dane Harris, and others with whom he was acting in concert, represented and held themselves out to be peace officers, commissioned by the City of Hot Springs, and represented that they were acting under color of law and with authority to arrest and imprison him in the private premises and back office of the Vapors. That some of the named defendants and other employees carried commissions indicating their authority as peace officers to the plaintiff. That when the plaintiff demanded and insisted upon his civil and Constitutional rights he was physically beaten and

abused and advised that he would be further abused by the defendants, who claimed they had the authority and right to arrest and imprison him. That the defendant Dane Harris was present in the inner-office during part of the illegal activity of his agents, servants and employees."

Then follows specific allegations of the damages which the plaintiff alleged he suffered, and in numbered Paragraph X the plaintiff alleged:

"That the plaintiff, as a result of all the wrongs committed upon him, the personal injuries sustained, the deprivation of his Constitutional and civil rights, guaranteed him by the Constitution of the United States, the Acts of Congress adopted thereto and his private, personal and property rights assured by the Constitution and the laws of the State of Arkansas, has been damaged in the amount of Two Million Six Hundred Fifty-Thousand ($2,650,000.00) Dollars."

The only jurisdictional allegation that exists in the complaint appears as numbered Paragraph II as follows:

"That jurisdiction in this action is based on an Act of Congress, specifically Title 42 U.S.C.A. 1983."

On April 18, 1961, the then named defendants filed a motion to dismiss and alleged therein:

(1) That the court lacks jurisdiction of the subject matter of the action;

(2) That the complaint does not state a claim upon which relief can be granted; and

(3) That no diversity of citizenship exists on the part of the plaintiff on the one hand and of the defendants on the other.

Prior to the filing of the motion to dismiss, the plaintiff had given notice to take the depositions of the named defendants and two other persons, Milford Sanders and John Ermy, and on the same date the motion to dismiss was filed defendants also moved that the taking of the depositions on the part of the plaintiff be postponed until the court ruled on the defendants' motion to dismiss.

On April 19, the day following the filing of the motion to dismiss and to postpone the taking of the depositions, the court entered an order overruling the motion to dismiss. The order overruling the motion to dismiss was based upon a letter [1] addressed to the attorneys for the parties.

On April 26, 1961, the depositions of the defendants, Dane Harris, Johnny Mattison (Madison), Harry Leopoulos, Jerry Rosenberg, and Milford Sanders and John Ermy were taken.

On April 24, 1961, prior to the taking of the depositions, the plaintiff served on defendants' attorneys a request for admissions, a copy of which was filed with the Clerk.

On May 2, 1961, following the taking of the depositions by plaintiff on April 26, the defendants filed their answer to the request for admissions in which they stated that all of the admissions were answered in detail in the depositions taken by the plaintiff, and the defendants requested that the answers and admissions which were made at the time of the taking of the depositions of the persons heretofore named be considered as

---

1. "The Court has considered the motion filed by defendants on April 18, 1961, to dismiss the complaint for lack of jurisdiction.

"I have also considered the memorandum submitted by plaintiffs in support of their motion.

"28 U.S.C., Section 1343 (1960 Supp) confers jurisdiction upon the United States District Courts of any civil action authorized by law to be commenced by any person to redress the deprivation, under color of any state law, statute, ordinance, regulation, custom and usage, of any right, privilege or immunity secured by the Constitution of the United States or by any act of Congress.

"In numbered paragraph VII the plaintiff alleges facts sufficient to state a claim under 42 U.S.C., Section 1983.

"In a suit to recover for alleged deprivation of civil rights diversity of citizenship is not required for jurisdictional purposes."

the defendants' response to the request for admissions.

On May 5, the plaintiff filed a motion alleging that he had taken certain discovery depositions and that he desired to dismiss his complaint against Jerry Rosenberg and "John Doe" Crawford without prejudice, which motion the court granted, and an order in accordance with the motion was entered on the same date. Also accompanying the motion to dismiss as to the defendants Rosenberg and "John Doe" Crawford was an amendment to the complaint designated as Amendment Number One to Complaint, in which he named as additional defendants Walter Ebel, Jr., Gordon Henderson, Fred Austin, Phil Marks, Jack Gunter, Gerald Vanderslice and Park Realty Company, a domestic corporation.

The amendment adopts and incorporates by reference many of the allegations contained in the original complaint. The amendment also contains the following allegations:

"(1) Paragraph I of the original complaint heretofore filed should be amended to read, as follows:

"That the plaintiff is a citizen and resident of Hot Springs, Garland County, Arkansas.

"That the defendants Dane Harris, Harry Leopoulos, Walter Ebel, Jr., Gordon Henderson, Fred Austin, Phil Marks, Jack Gunter, Gerald Vanderslice are citizens and residents of Hot Springs, Garland County, Arkansas; that the defendant Johnny B. Mattinson is also a citizen and resident of Hot Springs, Garland County, Arkansas. That defendant Park Realty Company is a domestic corporation, whose agent, servant and employee is Dane Harris.

"(2) That Paragraph II of the original complaint heretofore filed should be amended to read as follows:

"That jurisdiction in this action is based on an Act of Congress, specifically, Title 42 U.S.C.A. [§] 1983; and that jurisdiction is further based on the provisions of 28 U.S.Code, Section 1331 in that the matter in controversy arises under the Constitution and laws of the United States and the matter in controversy exceeds $10,000.00.

"(3) That Dane Harris, Walter Ebel, Jr., Harry Leopoulos, Gordon Henderson, Fred Austin, Phil Marks, Jack Gunter, Gerald Vanderslice are partners in the operation known as the Vapors and doing business as a restaurant, theater and gambling casino. That defendant Johnny B. Mattinson is an agent, servant and employee of the partners. That some of the defendants, their agents, servants and employees hold commissions from the City of Hot Springs, Arkansas, as peace officers, carry badges and guns and hold commissions from other law enforcement agencies, specifically, the State Police of the State of Arkansas, and are employed in various capacities as cashier, bouncer, dealer, pit boss, guard, box man. That some of the partners and employees holding commissions and carrying guns are authorized to act without compensation from the State Police or the City of Hot Springs in 'a manner prescribed by law.' The commissions held by some of the defendants, their agents, servants and employees, are broad and general and limited their authority only in that such commissions did not authorize the serving of any writs. That one of the defendants, Gerald Vanderslice, is a member of the Civil Service Commission of the City of Hot Springs, who by state law is the agency charged with the conduct and affairs of police officers of the City of Hot Springs. That all of the wrongs committed against the plaintiff and more particularly described in the complaint, were committed by one of the defendants, or their agents, servants and employees, acting within

the scope and course of their employment."

On May 16, 1961, the defendants filed their answer in which they admitted that the plaintiff is a citizen and resident of Hot Springs and that the defendants are citizens of the State of Arkansas and reside in the City of Hot Springs in Garland County, Arkansas. They deny that the court has jurisdiction of the subject matter of the action or the parties thereto.

They admit that they are partners in the operation of a casino located in an establishment known as The Vapors, but deny all other allegations contained in the original complaint or the amendment thereto.

On May 26, 1961, the defendants filed a motion for summary judgment which is now before the court. In the motion the defendants allege:

"1.

"That plaintiff and all defendants are citizens and residents of the State of Arkansas and jurisdiction is dependent upon 42 U.S.C., Section 1983 and 28 U.S.C., Section 1343.

"2.

"The pre-trial discovery deposition of the plaintiff, L. V. Rowe, having been taken and filed in this cause, fails to state or assert any claim under the jurisdictional sections aforesaid, and that this court is without jurisdiction to hear and determine this action.

"3.

"That the defendants are entitled to a Summary Judgment to be entered in favor of the defendants and against the plaintiff, L. V. Rowe, dismissing the cause of action for lack of jurisdiction.

"Wherefore, Defendants pray that the court enter judgment dismissing the suit of L. V. Rowe, and for all other proper relief."

The motion was served on the plaintiff and his attorneys on the same date it was filed with the Clerk of the Court.

On June 6, 1961, the plaintiff filed a response to the motion for summary judgment in which he alleged:

"I.

"That the plaintiff's claim for jurisdiction of this Court is stated in both original complaint, Paragraph 2, and in Paragraph 2 of the Amendment.

"II.

"That the factual basis for the jurisdictional allegation is found in Paragraphs 6 and 7 of the original complaint and Paragraph 3 as amended by plaintiff's first amendment to the complaint.

"III.

"That the original complaint, its amendment and the discovery depositions clearly set forth plaintiff's position, many of which facts are not disputed by the defendants. That the defendants are not entitled to Summary Judgment where the facts are either in dispute or the undisputed facts as pled by plaintiff entitle him to the relief sought.

"IV.

"That a motion for Summary Judgment, where the material jurisdictional facts have been well pled, is not a proper way to attack the Court's jurisdiction of this cause. That all reasonable inferences and doubts are resolved against the moving party in the motion for Summary Judgment.

"Wherefore, plaintiff having responded, prays that the motion for Summary Judgment be denied."

Motions and responses thereto are considered by the court in accordance with the provisions of Local Rule 8.[2]

2. "(a) Local conditions make it impracticable to establish regular times and places, at intervals sufficiently frequent

for the prompt dispatch of business, at which motions requiring notice and hearing may be heard and disposed of.

The parties have filed briefs with the court in support of their respective contentions, but the plaintiff has not filed or submitted affidavits or other documents in support of his response, and contends in his brief that the allegations of the complaint must be taken as true for the purpose of the motion, and that the court must consider the pleadings and evidence in the light most favorable to the plaintiff.

As heretofore shown, the motion was served on plaintiff and his attorneys on May 26, 1961, and the response of plaintiff was served and filed on June 5, 1961, together with the brief in opposition to the motion.

Rule 56(c), Fed.R.Civ.P., 28 U.S.C., provides:

"The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * * *"

Rule 12(b), Fed.R.Civ.P., provides that the defense of lack of jurisdiction over the subject matter, or over the person of the defendant or defendants, may be made by motion.

Subsection (c) of Rule 12 provides that after the pleadings are closed, any party may move for judgment on the pleadings, and "if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

All parties have been given every opportunity to present any material pertinent to the motion, but plaintiff has not presented anything, and the motion is now before the court upon the pleadings, the depositions, the requests for admissions, and the response thereto as disclosed in the depositions taken by plaintiff on April 26, 1961.

The original complaint alleged that jurisdiction of this action "is based on an

---

Therefore, unless otherwise ordered, motions shall be submitted and determined upon the record and motion papers hereinafter referred to. The moving party shall serve and file with his motion a proof of the notice of filing and service thereof, a brief separate statement of the reasons in support of the motion and citation of the authorities upon which he relies. If the motion requires consideration of facts not appearing of record, he may also serve and file copies of all photographs or documentary evidence deemed necessary in support of the motion in addition to affidavits required or permitted by the Federal Rules of Civil Procedure.

"(b) Any party opposing the motion shall serve and file within ten days from the time when a copy of the motion and supporting papers have been served upon him a brief statement of the reasons in opposition to the motion and citation of the authorities upon which he relies. If the motion requires consideration of facts not appearing of record, he may also serve and file copies of all photographs or documentary evidence deemed necessary in opposition to the motion in addition to affidavits required or permitted by the Federal Rules of Civil Procedure.

"(c) The moving party or party filing a response to the motion, at the time of filing such motion or response, may request oral argument or that ore tenus testimony be heard by the court before disposing of said motion, and the Judge, in the exercise of his discretion, for valid cause shown or upon his own initiative, may order, upon reasonable notice, that oral argument be had or that ore tenus testimony be introduced, or may proceed after the filing of a response, as provided in paragraph (b) hereof, or upon the expiration of 10 days from the service or the filing of the motion and supporting papers, as provided in paragraph (a) hereof, to dispose of the motion by entry of any appropriate order."

**316**

act of Congress, specifically Title 42, U.S.C., [§] 1983." [3]

In the amendment to the complaint the plaintiff further alleged that jurisdiction is also based on Title 28, U.S.C., Sec. 1331 (1960 Supp.),[4] but did not plead Title 28, U.S.C., Sec. 1343 (1960 Supp.).[5]

It is undisputed that the plaintiff and all of the defendants are citizens of the State of Arkansas and residents of the City of Hot Springs in the Western District, and the jurisdiction of the court depends upon whether the defendants, in doing what the plaintiff alleges was done, acted "under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

In Marion County Co-op. Ass'n v. Carnation Co., D.C.W.D.Ark.1953, 114 F. Supp. 58, 64, the court considered the question of whether a party opposing a motion for summary judgment should file affidavits or other pertinent material in opposition thereto, and held that the duty rested upon such party to specify some opposing evidence to that relied upon by the moving party. At page 64 of 114 F. Supp. the court quoted from Durasteel Co., Inc., v. Great Lakes Steel Corporation, 8 Cir., 1953, 205 F.2d 438, as follows:

" 'There may however be a formal issue presented by the pleadings but shown by affidavit or otherwise not to be genuine. * * * An issue of fact is not genuine unless it has legal probative force as to a controlling issue, 35 C.J.S., Federal Courts Sec. 144, p. 1205. The motion for summary judgment is not a trial of the issues but for the purpose of determining whether in fact there are any genuine issues as to material facts. If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as to the controlling material facts, then the court should enter summary judgment.' "

On appeal of the case, 8 Cir., 1954, 214 F.2d 557, the court at pages 561–562 said:

"It is clear that no genuine issue of material fact existed as to any of the facts stated in the affidavits or depositions. The question, therefore, resolves itself to this: Is a general allegation in a complaint, standing alone, sufficient to withstand a motion for summary judgment supported by a prima facie showing that no genuine issue of material fact exists?

"Courts, including our own, which have considered this question have uniformly answered it in the negative. In Durasteel Co. v. Great Lakes Steel Corp., supra, it was said, 'If it is made clearly to appear on such a motion that even though there is an issue under the pleadings there is in fact no dispute as to the controlling material facts, then the court should enter summary judgment.' Cf. Hurd v. Sheffield Steel Corp., supra [8 Cir., 181 F.2d 269]. The

3. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

4. "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

5. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

" * * * * *

"(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

reason for the rule is apparent. Rule 56 would be rendered useless were the allegations of the pleadings to be determinative of a motion for summary judgment. Lindsey v. Leavy, 9 Cir., 1945, 149 F.2d 899; Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469; Surkin v. Charteris, 5 Cir., 1952, 197 F.2d 77; Hisel v. Chrysler Corp., D.C.W.D.Mo.1951, 94 F.Supp. 996. Also see and compare Radio City Music Hall Corp. v. U. S., 2 Cir., 1943, 135 F.2d 715; Gifford v. Travelers Protective Ass'n of America, 9 Cir., 1946, 153 F.2d 209."

In McNutt v. General Motors Acceptance Corp., 1936, 298 U.S. 178, at page 189, 56 S.Ct. 780, at page 785, 80 L.Ed. 1135 the court said:

"The prerequisites to the exercise of jurisdiction are specifically defined and the plain import of the statute is that the District Court is vested with authority to inquire at any time whether these conditions have been met. They are conditions which must be met by the party who seeks the exercise of jurisdiction in his favor. He must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing. If he does make them, an inquiry into the existence of jurisdiction is obviously for the purpose of determining whether the facts support his allegations. In the nature of things, the authorized inquiry is primarily directed to the one who claims that the power of the court should be exerted in his behalf. As he is seeking relief subject to this supervision, it follows that he must carry throughout the litigation the burden of showing that he is properly in court. The authority which the statute vests in the court to enforce the limitations of its jurisdiction precludes the idea that jurisdiction may be maintained by mere averment or that the party asserting jurisdiction may be relieved of his burden by any formal procedure. If his alle-

gations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof. And where they are not so challenged the court may still insist that the jurisdictional facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of evidence. We think that only in this way may the practice of the District Courts be harmonized with the true intent of the statute which clothes them with adequate authority and imposes upon them a correlative duty."

In Birmingham Post Co. v. Brown, 5 Cir., 1954, 217 F.2d 127, the court at page 130 said:

"There is no question that a serious error was committed by the District Court in charging that the burden of proof was on the defendant to show plaintiff was not domiciled in Texas. No matter how the issue is raised, whether by motion, by answer, or upon the Court's own initiative, the burden of proving all jurisdictional facts rests upon the plaintiff or person asserting that the Court has jurisdiction." (Citing many cases, including McNutt, supra.)

The depositions taken by plaintiff on April 26, 1961, with their exhibits comprise 161 pages. It is evident from a reading of the depositions that the plaintiff was seeking to locate witnesses who might aid the plaintiff in establishing the allegations of his complaint. The court has read the depositions and it is not necessary that each of them be abstracted and set forth herein. Suffice it to say, in substance the depositions taken by plaintiff establish that the defendants operate the casino at the Vapors in the City of Hot Springs, Arkansas. Gambling of various kinds is engaged in at all times the casino is open. The plaintiff, prior to the night of April 1, 1961, had been a more or less frequent patron of the casino,

but seems to have patronized the dice tables more frequently than any of the other forms of gambling. During the evening of April 1, 1961, the casino manager, the defendant John B. Mattison, obtained information to the effect that the dealer at the crap table where plaintiff was playing was "slipping chips" to the plaintiff, who was placing them in one of his lefthand pockets. Whereupon the manager approached the table and told the dealer to go to the office, and at the same time told the plaintiff to gather up his chips and accompany him to the office. The dealer was immediately discharged.

A Mr. Dooley was called to face the plaintiff in the accusation that he and the dealer were defrauding the casino. Naturally the plaintiff denied that he was engaged in a conspiracy or any fraudulent acts with the dealer, and after the lapse of a few minutes, the plaintiff was paid for the chips that he had in his possession and asked to leave the premises.

There were no law enforcement officers present in the back room or for that matter in the casino.

John Ermy, the guard, whose duty it was to remain near the cashier, is a former Chief of Police of Hot Springs, and had on his person a pistol. He had no permit to carry a pistol. He in nowise accosted the plaintiff or even spoke to him. All of the witnesses emphatically denied that any force of any kind was used on the plaintiff, and that all they did was to request him to go to the office and conducted him there. After some conversation, he "surrendered his chips," was paid for them, and left the premises.

Milford Sanders, Chief of Police of the City of Hot Springs, testified that he did not furnish officers to protect the Vapors Club; that John Ermy was a retired Hot Springs police officer, but had no active commission as such; that Ermy and one Threadgill were both employed as guards at the Vapors and carried honorary police officer's cards. The card referred to reads as follows:

"Commission

"Know all men by these presents:

"That I, Milford Sanders, Chief of Police of Hot Springs, Arkansas, reposing special confidence in the worth, ability and integrity of

Do by virtue of my office appoint him a

Honorary Police Officer

without compensation, to be and act as such in a manner prescribed by law until December 31st of the year designated hereon at

and no other place. (This does not authorize the serving of any writs whatsoever.)

"In testimony hereof, I have hereunto set my hand this —— day of ——, 19—.

/s/ Milford Sanders,
Chief of Police, Hot Springs, Arkansas"

On the reverse side of the card the following appears:

"

Signature of Holder
Honorary Police Officer

"This Card identifies holder as of good reputation only. Persons having any doubt as to the rightful holder should demand his or her signature and if not promptly and correctly given, retain card and notify

Milford Sanders, Chief of Police."

The card does not entitle the bearer to make arrests, and the undisputed facts establish that most all the attorneys, doctors, and businessmen in Hot Springs carry such a card. However, the defendants Mattison and Rosenberg did not have such a card, but the defendant Leopoulos may have had one. He did not know whether the defendant Harris had such a card, but stated that the City Commissioners do carry those cards merely for identification.

On May 22, 1961, the defendants took the deposition of the plaintiff, which

deposition is before the court. Beginning on page 15 of the deposition, the plaintiff testified that he was in the casino at the Vapors Club on the night of April 1 and early morning of April 2, 1961, "shooting dice." He occupied a position on the left-hand side of the table or at the corner on the side of the box man or the man who takes money. He was unable to state how many times he had been in the casino; that he often ate his meals at the restaurant and then "killed an hour or two shooting dice."

In response to a question that he relate what happened on the night of April 1 or the early morning hours of April 2, he stated that he was at the dice table and was asked to leave by defendant John B. Mattison; that Mattison with another man approached the table and tapped the dealer on the shoulder and said, "Please come with me and that gentleman will take your place." Mattison then turned to him, grabbed him by the arm and said, "Get your chips and come with me." "I said, 'Where are we going?'" "He said, 'We are going to the office.'" "I asked him, 'What for?'" "He said, 'Come on and we'll find out.'" "I stepped away from the table."

"Q. Did you get your chips?

"A. Yes."

The plaintiff further testified that after he and Mattison moved from the dice table, he asked Mattison what was wrong, and Mattison replied: "God damn, come on and you will find out."

At that time he was standing by the side of the table at the entrance to the dance floor. He stated that Mattison grabbed him by the arm and said: "If you don't come on you will have so many knots on your head you can't wear your hat"; that Mattison "wrenched his right arm," and he felt another man's hand on his arm, and they lifted fifty percent of his weight off of the floor and "doodled" him back to a room. When they entered the back room or back office, Mattison and Leopoulos wanted to know how many chips he had. At that time only Mattison, Leopoulos and the dealer were present.

They called another man in and asked him whether the plaintiff was the man that he had referred to as receiving chips from the dealer, and the man said yes. Mattison asked the person how many chips the plaintiff had bought, and the person said $50 worth.

Beginning at the bottom of page 19 of the deposition, the testimony of the plaintiff appears as follows:

"I bought $100.00 worth in two different bunches. And then Mr. Leopoulos spoke up and said, 'Give him his damned hundred dollars and let him get out of here.' I don't recall what was said to Mr. Leopoulos before he said, 'I'll splatter your head against the wall until you can't get your hat on.' I counted my chips out and I had $280.00 worth. They still didn't want to pay me for my chips and I demanded that I get my money before I left, and they said, 'Go ahead and pay the S. O. B. and let him get out of here.'

"Q. Who is they? A. Mr. Leopoulos. Then I left. I was escorted out by the big fellow who helped Mr. Mattison take me to the office.

"Q. What do you mean by 'escorted'? A. He followed me at the back to the door, and he said, 'You heard what they said.' When I was leaving Mr. Leopoulos said, 'When I get through with you in this town, there won't be any room for you; there won't be any of you left.'

"Q. Then you left? A. Followed by the party who assisted Mr. Mattison, and he said, 'You heard what they told you.' I told him I didn't need a hearing aid, I understood perfectly.

"Q. Is that all that transpired from the time you were asked away from the table until you left? Have you gone into detail and told us everything that happened? A. Other than a lot of profanity that was used, that is just what happened."

The plaintiff was then asked about irrelevant matters, and beginning at page 23 of the deposition, the plaintiff stated again what had happened substantially as heretofore set forth. At the end of that statement, and on page 26 of the deposition, he was asked:

"Q. As you recall, that is everything that transpired from the time you left the table until you went out of the club?

"A. That is correct."

The record before the court is convincing that what happened or what was done at the time complained of was not done by anyone under color of any State law, statute, ordinance, regulation, custom, or usage. The record reflects that the defendants are operating a gambling house contrary to Ark.Stat.Anno., Sec. 41–2001 (1947). They are keeping gambling devices in defiance of Sec. 41–2003, and the plaintiff has been and was a patron of the casino and openly violated Sec. 41–2005. In view of the facts and the record before the court, it seems unnecessary to review at length the many decisions construing Title 42, U.S.C.A. § 1983, formerly 8 U.S.C.A. § 43.

In Watkins v. Oaklawn Jockey Club, D.C.W.D.Ark.1949, 86 F.Supp. 1006, this court dealt with a somewhat similar situation, except that in the Watkins case the officers, Brown and Fulton, who ejected Watkins from the race track, were in fact Sheriff and Deputy Sheriff, respectively, but at the time of the ejection of Watkins from the race track, they were acting as guards of the Oaklawn Jockey Club.

The case was appealed to the United States Court of Appeals for the Eighth Circuit, 1950, 183 F.2d 440, and in affirming the decision of this court, the Court of Appeals at page 443 said:

"To establish his cause of action under § 43, supra, therefore, the burden was upon plaintiff to prove that defendants Brown and Fulton in ejecting him from the race track were acting under color of some statute of Arkansas and not merely as individuals or as agents only of the Jockey Club.

"In United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368, the Supreme Court say: 'Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.' In Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. [1031] 1040 [89 L.Ed. 1495], the Court say: 'It is clear that under "color" of law means under "pretense" of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded.'"

\*     \*     \*     \*     \*     \*

"The court might have added that officers Brown and Fulton in ejecting plaintiff from the race track were not performing any duty imposed upon them by the State of Arkansas. Screws v. United States, supra, 325 U.S. at pages 107–108, 65 S.Ct. 1031. Neither is there any evidence indicating that defendant officers made any 'pretense' that they were acting under state law. They were paid for their services by the Jockey Club and not by the state. They were acting, therefore, only 'in the ambit of their personal pursuits.'"

The facts as reflected by the record show beyond doubt that there is no genuine issue of any material fact relevant to the question of jurisdiction of this court. Under all the facts the court lacks jurisdiction of the claims asserted by plaintiff, and the motion for summary judgment should be sustained.

An order is being entered today sustaining the motion of defendants and dismissing the plaintiff's complaint and amendment thereto.